1

2                    IN THE UNITED STATES DISTRICT COURT

3               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

4              HONORABLE MICHAEL M. ANELLO, DISTRICT JUDGE

5

6      _____
                                       )
7      ELWOOD TIMOTHY WHITE, ET AL.,   )
                                       )   CASE NO. 13 CV 1166-MMA
8                   PLAINTIFFS,        )
                                       )   MAY 18, 2015
9                       VS.            )
                                       )   MONDAY, 2:00 PM
10     COUNTY OF SAN DIEGO,            )
                                       )
11                  DEFENDANT.         )   MOTION IN LIMINE HEARING
       _____)

12

13               REPORTER'S TRANSCRIPT OF PROCEEDINGS

14

15     APPEARANCES:

16

17     FOR THE PLAINTIFF:        JAMON R. HICKS
                                 ATTORNEY AT LAW
18                               THE DOUGLAS/HICKS LAW
                                 8484 WILSHIRE BLVD.
19                               SUITE 548
                                 BEVERLY HILLS, CA  90211

20     FOR THE DEFENDANT:        RICKY R. SANCHEZ
                                 ATTORNEY AT LAW
21                               OFFICE OF COUNTY COUNSEL
                                 COUNTY OF SAN DIEGO
22                               1600 PACIFIC HWY
                                 SUITE 355
23                               SAN DIEGO, CA  92101

24

25

                ELIZABETH CESENA, CSR 12266, (619) 237-0100
                     UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF CALIFORNIA

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 2 of 45

1      SAN DIEGO, CALIFORNIA, MAY 18, 2015, MONDAY, 2:30 PM

2                          --oOo--

3          THE CLERK:  PLEASE REMAIN SEATED.  COME TO ORDER.

4   THIS COURT IS ONCE AGAIN IN SESSION.

5        MATTER NUMBER 11, 13 CV 1166, WHITE VERSUS COUNTY OF SAN

6   DIEGO.

7          MR. HICKS:  GOOD AFTERNOON, YOUR HONOR.

8        JAMON, J-A-M-O-N; HICKS, H-I-C-K-S ON BEHALF OF

9   PLAINTIFFS.

10         THE COURT:  GOOD AFTERNOON.

11         MR. SANCHEZ:  GOOD MORNING, YOUR HONOR.

12       RICKY SANCHEZ FROM THE OFFICE OF COUNTY COUNSEL ON BEHALF

13  OF THE DEFENDANTS.

14         THE COURT:  GOOD AFTERNOON.  DID YOU SAY GOOD

15  MORNING?

16         MR. SANCHEZ:  DID I HAD SAY GOOD MORNING?  I'M

17  WORKING TOO HARD.  GOOD AFTERNOON THEN.

18         THE COURT:  ALL RIGHT.  WE'RE ON FOR A FINAL

19  PRE-TRIAL CONFERENCE.  I GUESS WE STARTED THIS SOME TIME AGO

20  AND PUT IT OVER TO TODAY.  I KNOW WE HAVE SOME MOTION IN

21  LIMINE TO DEAL WITH, I'M GOING TO PUT THOSE TOWARD THE END.  I

22  HAVE KIND OF AN AGENDA THING TO CHAT ABOUT.  SO LET'S GO

23  THROUGH THAT AND, OF COURSE, WE'LL HEAR ANYTHING YOU FOLKS

24  WANT TO CHAT ABOUT TOO.

25         FIRST OF ALL, I THINK I KNOW THE ANSWER BUT WE'RE ALWAYS

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 3 of 45

1 ENCOURAGED TO ASK ABOUT SETTLEMENT EFFORTS. I KNOW WHEN YOU

2 WERE LAST HERE, I THINK YOU HAD HAD A SETTLEMENT CONFERENCE AND

3 I WAS TOLD THEN IT WOULD NOT BE PRODUCTIVE TO MAKE YOU GO DO IT

4 AGAIN. I JUST THROW IT OUT THERE, HAS ANYTHING CHANGED? WOULD

5 THERE BE ANY BENEFIT IN ME ORDERING YOU BACK TO SOME KIND OF

6 FINAL SETTLEMENT CONFERENCE AT THIS POINT?

7          MR. HICKS: YOUR HONOR, MY UNDERSTANDING IS NOTHING

8 HAS CHANGED. THAT WE'RE STILL TOO FAR APART. I WOULD BE

9 HAPPY TO SPEAK TO MR. SANCHEZ TO SEE IF THAT POSITION HAS

10 REMAINED THE SAME BUT I DON'T THINK WE NEED TO BE SENT OUT TO

11 MEDIATION.

12          THE COURT: ALL RIGHT. MR. SANCHEZ, WOULD IT BE A

13 WASTE OF TIME IF I WERE TO ORDER YOU BACK TO SETTLEMENT AT

14 THIS POINT.

15          MR. SANCHEZ: I WOULD SAY, YES.

16          THE COURT: OKAY. AGAIN I'M A RECOVERING LAWYER SO I

17 DON'T WANT TO WASTE YOUR TIME ANYMORE THAN WE HAVE TO.

18 CONFIRMING THE TRIAL DATE AND LENGTH OF TRIAL, WE'RE NOW SET

19 FOR JUNE 11, IS THAT RIGHT?

20          MR. SANCHEZ: YES, YOUR HONOR.

21          MR. HICKS: YES, YOUR HONOR.

22          THE COURT: I HAVE NOTES HERE, SOMEBODY SAID TEN

23 DAYS, SOMEBODY SAID MORE. IN TERMS OF THE LENGTH OF THE

24 TRIAL, WHAT WOULD OUR BEST GUESSTIMATE BE NOW FROM

25 THE PLAINTIFF'S STANDPOINT?

1      MR. HICKS:  YOUR HONOR, I BELIEVE I INDICATED TEN

2  DAYS AS KIND OF A LONG ESTIMATE.  I KIND OF GATHERED SOME OF

3  YOUR INFORMATION FROM THE JURY SELECTION IN THE CRIMINAL

4  MATTER SO I WOULD ASSUME THAT IF WE HAVE A JURY WITHIN A DAY,

5  PROBABLY FIVE TO SEVEN, AT THE MOST COURT DAYS.

6      THE COURT:  ALL RIGHT.  WE'LL HAVE OUR JURY BY NOON

7  FOR SURE.  SO HE SAYS FIVE TO SEVEN DAYS FOR THE PLAINTIFF'S

8  CASE, SOME OF YOUR CASE I GUESS WILL GET OUT ON HIS CASE SO

9  WHAT DO YOU THINK?

10     MR. SANCHEZ:  I THINK SEVEN AT A MINIMUM, TEN ON

11 THE OUTSIDE.  I THINK WE HAVE ALWAYS HAD THAT ESTIMATE.

12     THE COURT:  TOTAL?

13     MR. SANCHEZ:  COURT DAYS.

14     THE COURT:  TOTAL.  YOUR CASE AND HIS CASE.

15     MR. SANCHEZ:  RIGHT.

16     MR. HICKS:  JUST SO THE COURT KNOWS, WE INTEND TO ALL

17 THE OFFICERS IN OUR CASE IN CHIEF SO THAT USUALLY MAKES OUR

18 CASE AND CHIEF AND THE DEFENSE.

19     THE COURT:  AND WE WOULD UNDERSTAND THAT THEY WOULD

20 BE ABLE TO IN ESSENCE DIRECT THEIR OWN EXAMINATION DURING YOUR

21 CASE?  IS THAT YOUR INTENTION?  SO THAT WOULD SAVE SOME TIME.

22     MR. HICKS:  CORRECT.

23     MR. SANCHEZ:  AT THIS POINT, THAT WAS A THOUGHT THAT

24 I HAD, YOUR HONOR BUT I HAVEN'T MADE UP MY MIND COMPLETELY

25 WITH THAT APPROACH.

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 5 of 45

1    THE COURT:  EVEN IF YOU DID THAT, YOU WOULD PROBABLY

2  WANT TO FOLLOW UP WITH SOME MORE.  THAT'S PROBABLY THE MORE

3  EFFICIENT WAY TO DO.

4    ALL RIGHT.  WE'LL SAY TEN DAYS, I WANT TO TELL

5  THE JURY UP FRONT HOW MUCH TIME WE'LL TAKE OUT OF THEIR LIVES

6  AND THAT WILL BE OUR BEST ESTIMATE FOR NOW.

7    WHEN WE WERE LAST HERE, I GUESS THE PLAINTIFF HAD NOT

8  FILED ALL THEIR PRE-TRIAL DISCLOSURE.  I THINK THAT'S ALL

9  HAPPENED NOW.  RIGHT?

10    MR. HICKS:  YES, YOUR HONOR.

11    THE COURT:  I SEE A DIFFERENCE OF OPINION OVER HERE

12  FROM MR. SANCHEZ.  HE DOESN'T THINK YOU DID FILE EVERYTHING.

13  WHAT'S HE MISSING?

14    MR. SANCHEZ:  AS I WAS SHARING WITH COUNSEL, HE SENT

15  TWO LETTERS TO PLAINTIFF'S COUNSEL REGARDING LOCAL RULE 16.1

16  REQUIREMENT THAT THEY DISCLOSE INFORMATION PARTICULAR TO THEIR

17  WRONGFUL DEATH AND NEGLIGENT CAUSES OF ACTION.  AT THE LAST

18  HEARING, I BELIEVE THAT WAS BROUGHT TO MR. DOUGLAS' ATTENTION.

19  HE SAID HE WOULD COMPLY.

20    A PRE-TRIAL DISCLOSURE WAS SENT TO US WHICH WAS

21  ESSENTIALLY THE SAME ONE THEY HAD FILED PREVIOUSLY, BUT DIDN'T

22  CONTAIN ANY OF THE INFORMATION THAT COUNSEL WAS ORDERED TO

23  PRODUCE TO US UNDER 16.1.

24    I HAVE TRIED TO RESOLVE THIS.  I SENT A LETTER INITIALLY

25  ON THE 24TH OF DECEMBER REMINDING COUNSEL OF THE COURT'S ORDER

Case 3:13-cv-01166-MMA-RBB   Document 74   Filed 05/22/15   Page 6 of 45

1    DATED JANUARY 6, EXCUSE ME, EXCUSE ME MARCH 2, 2015, PROVIDING

2    PLAINTIFF'S COUNSEL WITH A COPY OF LOCAL RULE 16.1 SUB PART F,

3    WHICH ITEMIZES ALL THE INFORMATION THAT WAS SUPPOSED TO BE

4    PROVIDED TO US.  AND AS OF MARCH 2, THAT INFORMATION HAD NOT

5    BEEN PROVIDED AND I THINK I HAD ONE PRIOR CORRESPONDENCE TO

6    PLAINTIFF'S COUNSEL REGARDING THAT SAME ITEM, REMINDING THEM

7    THAT THEY HAD NOT YET COMPLIED WITH OUR REQUEST FOR THE 16.1

8    COMPLIANCE.

9         I THINK I SPOKE TO COUNSEL JUST MOMENTS AGO IN CASE HE

10   WAS NOT AWARE ABOUT THAT PARTICULAR ISSUE.

11        THE COURT:  SO WHAT ABOUT THAT?  HOW ARE WE GOING TO

12   FIX THAT?

13        MR. HICKS:  YOUR HONOR, MY UNDERSTANDING IS THAT

14   PLAINTIFFS DID FILE AN AMENDED MEMO, CONTENTIONS OF FACT AND

15   LAW ON FEBRUARY 17 WHICH WAS THE DUE DATE.  I BELIEVE

16   THE ISSUE CONCERNING THE LOCAL RULE DEALT WITH A BREAK DOWN OF

17   THE DAMAGES.

18        AS YOU KNOW, THIS IS A DEATH CASE.  THERE'S NOT GOING TO

19   BE AN ECONOMIST TO TESTIFY AS TO SOME SORT OF CALCULATION AS TO

20   THE WRONGFUL DEATH DAMAGES.  I DON'T EVEN KNOW, YOUR HONOR, HOW

21   TO FORWARD THAT INFORMATION IN INTO A CONTENTION OF FACT AND

22   LAW.

23        THE COURT:  WELL, MAYBE HE WANTS YOU TO TELL HIM I AM

24   NOT GOING TO DO THIS, I AM GOING DO THAT, HE'S ENTITLED TO

25   SOME SORT OF DISCLOSURE, RIGHT?

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 7 of 45

1    MR. HICKS:  I DO UNDERSTAND THAT, YOUR HONOR.  IN MY

2    EXPERIENCE, LIKE FOR EXAMPLE, I DON'T KNOW AS I STAND HERE

3    TODAY WHAT AMOUNT WE WOULD BE ASKING FOR IN WRONGFUL DEATH

4    DAMAGES.  I HAVE TRIED CASES WHERE I DIDN'T EVEN ASK FOR AN

5    AMOUNT PERIOD AND LEFT THEM TO THE DISCRETION OF THE JURY.

6        I COULD DO AN AMENDED MEMOS OF CONTENTIONS OF LAW THAT

7    STATES THE TYPES OF DAMAGES, ECONOMIC VERSUS NON ECONOMIC, IF

8    THAT WOULD SUFFICE FOR THE COURT?

9        THE COURT:  I THINK THAT'S PART WAY WHERE YOU ARE

10   GOING.  THAT'S WHAT YOU WANT, RIGHT?

11       MR. SANCHEZ:  YES, YOUR HONOR.  IN PROVIDING

12   THE LOCAL RULE TO COUNSEL, IT'S VERY SPECIFIC WITH RESPECT TO

13   A DEATH EVENT, THEY'RE SUPPOSE TO PROVIDE US WITH

14   THE DECEDENT'S BIRTH DATE, MARITAL STATUS, I BELIEVE I KNOW

15   THAT, SURVIVING SPOUSE, THERE IS NONE TO MY KNOWLEDGE,

16   EMPLOYMENT HISTORY FIVE YEARS PRIOR TO DEATH, WORK EXPECTANCY.

17   REASONABLE PROBABILITY OF PROMOTION, GRADE OF EARNINGS FOR

18   FIVE YEARS BEFORE THE DATE OF THAT, LIFE EXPECTANCY UNDER THE

19   MORTALITY TABLES, GENERAL PHYSICAL CONDITION IMMEDIATELY PRIOR

20   TO THE DATE OF DEATH, NAMES, DATES OF BIRTH OF ANY CHILDREN

21   AND RELATIVES, LIST OF INJURIES CLAIMED BY THE RELATIVES.  A

22   LIST OF THE DEPENDENTS AND MONETARY CONTRIBUTIONS, THEY'RE

23   EQUIVALENT MADE BY DEPENDENTS FOR A FIVE YEAR PERIOD PRIOR TO

24   DEATH.

25       NOW MIND YOU, WE ATTEMPTED TO GET SOME THIS INFORMATION

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 8 of 45

1    DURING DISCOVERY AND THERE'S SOME WAFFLING WITH RESPECT TO

2    PARENT'S REPRESENTATIONS ABOUT MONEY RECEIPTS AND THINGS OF

3    THAT SORT FROM THE DECEDENT.  SO ALL THAT WE'VE BEEN ASKING

4    PLAINTIFF TO COMPLY WITH IS THE LOCAL RULE AND JUST ITEMIZE

5    EACH ONE OF THESE THINGS ACCORDING TO THE LIST, IF THEY ARE NOT

6    CLAIMING IT, PUT DOWN THEY'RE NOT CLAIMING IT.

7        MORTALITY TABLES, PERTAIN NOT ONLY TO ECONOMIC DAMAGES

8    BUT ALSO PERTAIN TO THEIR CLAIMED LOSS OF HOUSEHOLD SERVICES,

9    GUIDANCE AND COUNSELING, THINGS OF THAT SORT WHICH OSTENSIBLY

10   WOULD BE RECOVERABLE.  THINGS OF THAT SORT SO THIS IS

11   INFORMATION THAT WE BROUGHT TO THE COURT AND COUNSEL'S

12   ATTENTION AT OUR FIRST PRE-TRIAL CONFERENCE.  WE GOT AN ORDER

13   WHERE THEY AGREED TO PROVIDE IT.  THEY DID DO AN AMENDED

14   PRE-TRIAL DISCLOSURE BUT NONE OF THAT INFORMATION WAS CONTAINED

15   IN IT.  I FIGURED THAT PERHAPS THEY WEREN'T FAMILIAR WITH THE

16   RULES SO I MADE A COPY OF IT AND I STILL HAVEN'T RECEIVED THIS

17   INFORMATION.

18        THE COURT:  WELL, IT SEEMS -- ARE YOU FAMILIAR, IS

19    THIS THE FIRST TIME YOU ARE HEARING OF THIS?  CAN WE BLAME

20    THIS ON MR. DOUGLAS.  THIS IS PRETTY SIMPLE, PRETTY

21    STRAIGHTFORWARD.  I GUESS I DIDN'T REALIZE THE EXTENT OF THE

22    NON COMPLIANCE.  PRETTY SIMPLE, YOU LAY THE RULE OUT YOU SAY,

23    GO RIGHT DOWN AND WRITE DOWN WHAT YOU GOT AND WHAT YOU DON'T

24    GOT, PRETTY SIMPLE, HE IS ENTITLED TO THE INFORMATION.  HE WAS

25    ENTITLED TO IT A LONG TIME AGO.

Case 3:13-cv-01166-MMA-RBB   Document 74   Filed 05/22/15   Page 9 of 45

1    SO I THINK YOU KNOW IT MIGHT MAKE SOME DIFFERENCE TO HIM

2  IN HOW HE'S GOING TO PREPARE TO TRY THE CASE, HIS EXPERT

3  OPINION.  THIS IS THE KIND OF STUFF HE WOULD LIKE TO HAVE WAY

4  IN ADVANCE OF TRIAL.  WHAT DO YOU THINK?  CAN WE GET IT TO HIM

5  LIKE A WEEK FROM TODAY?

6    MR. HICKS:  I WILL MAKE SURE TO HAVE IT TO HIM BY

7   THE END OF THIS WEEK.

8    MR. SANCHEZ:  THAT'S FINE.  IF I CAN GET IT BY NEXT

9   MONDAY AS OPPOSED TO 5:00 O'CLOCK NEXT MONDAY.

10    THE COURT:  YOU DON'T WANT HIM TO WAIT UNTIL YOUR FAX

11   MACHINE IS TURNED OFF?

12    YOU SAID BY THE END OF THE WEEK.  TODAY IS MONDAY.  HOW

13  ABOUT BY CLOSE OF BUSINESS FRIDAY?  SO HE CAN SPEND THE WEEKEND

14  WORKING ON HIS CASE, IS THAT REASONABLE?

15    MR. HICKS:  THAT'S REASONABLE, YOUR HONOR.  I CAN DO

16   THAT.

17    THE COURT:  ASSUMING THAT HAPPENS, I THINK WE HAVE

18   GOT EVERYTHING PRODUCED AND DISCLOSED.  RIGHT?  ANY OTHER

19   ISSUES ON THAT?

20    MR. HICKS:  NOTHING FROM THE PLAINTIFF, YOUR HONOR.

21    MR. SANCHEZ:  NO, YOUR HONOR.

22    THE COURT:  THE OPERATIVE PLEADING HERE, I GUESS

23  WE'RE REALLY DOWN TO TWO CLAIMS, WELL NOT JUST TWO BUT WE HAVE

24  GOT NUMBER ONE, THE 1983 EXCESSIVE FORCE CLAIM AGAINST DEPUTY

25  ASTORGA.  AM I PRONOUNCING THAT CORRECTLY?

Case 3:13-cv-01166-MMA-RBB  Document 74  Filed 05/22/15  Page 10 of 45

1        MR. SANCHEZ:  YOU ARE, YOUR HONOR.

2        THE COURT:  AND IN ADDITION WE HAVE THE WRONGFUL

3 DEATH AND NEGLIGENCE CLAIMS AGAINST BOTH THE COUNTY AND THE

4 DEPUTY, IS THAT ALL WE HAVE LEFT?

5        MR. SANCHEZ:  THAT'S CORRECT, YOUR HONOR AND WITH

6 RESPECT TO WRONGFUL DEATH, EVERYONE SORT OF SAYS THAT'S AN

7 INDEPENDENT CAUSE OF ACTION, WRONGFUL DEATH BY NEGLIGENCE OR

8 WRONGFUL DEATH BY BATTERY.  AS A PRACTICAL MATTER, I THINK WE

9 HAVE THREE CLAIM TO LITIGATE.

10       THE COURT:  WITNESS LISTS HAVE BEEN PROVIDED.  WHAT

11 I'D LIKE YOU TO DO, I KNOW THERE IS SOME OVERLAP, ON THE FIRST

12 MORNING OF TRIAL, A JOINT LIST, MAYBE EVEN THE  DAY BEFORE

13 TRIAL, A JOINT WITNESS LIST SO I KNOW THE SUM TOTAL OF ALL

14 THE WITNESSES AND I DON'T HAVE TO REPEAT FROM ONE LIST TO

15 ANOTHER.  I KNOW THERE'S SOME OVERLAP THERE.

16    I NOTE THE PLAINTIFF LISTS TEN WITNESSES AND THAT SOUNDS

17 REASONABLE.  I DON'T KNOW HOW WE'RE GOING TO DRAG THAT OUT TO

18 SEVEN OR TEN DAYS.  BUT THE DEFENSE ON THE OTHER HAND LISTS 41

19 PROBABLY WITNESSES AND ANOTHER 41 POTENTIAL WITNESSES SO THAT

20 CAUSES THE COURT GRAVE CONCERN.

21    IS THAT JUST THE WHOLE PHONE BOOK THERE JUST TO BE SAFE

22 OR WHAT?

23       MR. SANCHEZ:  IS A SAFE RENDITION OF THE NAMES BUT IT

24 IS ALSO THE NAMES OF INDIVIDUALS THAT HAD ACTUAL PERCIPIENT

25 KNOWLEDGE OF EACH OF THE EVENTS THAT TRANSPIRED ON THAT DAY

1    ALL THE WAY UP UNTIL THE MOMENT THAT THE FATAL SHOT WAS TAKEN.

2          THE COURT:  I UNDERSTAND.  BUT REALISTICALLY, ARE YOU

3    GOING TO CALL?  WHAT I WOULD LIKE TO DO IS TAKE A STAB AT THE

4    REAL, REALISTIC LIST.  FIRST OF ALL, FOR ONE REASON I'M GOING

5    TO READ THE WITNESS LIST TO THE JURORS TO SEE IF ANYONE KNOWS

6    ANYBODY.  SO ANYBODY THAT IS ACTUALLY GOING TO TESTIFY SHOULD

7    CLEARLY BE ON THE LIST.  ANYBODY WHOSE NAME IS GOING TO BE

8    MENTIONED, PROBABLY IF THEY DON'T APPEAR, SHOULD BE ON THE

9    LIST.  PEOPLE THAT MAY OR MAY NOT OR SECONDARY, THIRD, FOURTH

10   HAND WITNESSES, POTENTIAL REBUTTAL WITNESSES, ALL THAT STUFF

11   PROBABLY DOESN'T NEED TO BE ON THE LIST.  IT WOULD BE HELPFUL

12   FOR US IN OUR TIME AND FOR TIME BUDGETING TO KIND OF FOCUS AND

13   GET IT DOWN TO THE REAL WORLD LIST SO MAYBE MR. SANCHEZ, IF

14   YOU HAVEN'T ALREADY DONE THAT.

15         MR. SANCHEZ:  I WILL CERTAINLY TRY TO DO THAT, YOUR

16   HONOR.

17         THE COURT:  OKAY.  AND ULTIMATELY, IF YOU CAN GIVE ME

18   A JOINT WITNESS LIST.  AT THAT POINT, I DON'T NEED TO TELL THE

19   JURY IF IT'S A DEFENSE WITNESS OR A PLAINTIFF WITNESS, IT WILL

20   BE A LIST.  THAT WILL BE HELPFUL TO ME.  AN EXHIBIT LIST, WE

21   HAVE THEM FROM BOTH SIDES.

22       THE MARKING -- AND I KNOW THE RULES MAYBE SAY SOMETHING

23   DIFFERENT, IT'S PROBABLY EASIER TO TRY TO MAKE THIS SIMPLE AND

24   DEVISE, TYPICALLY THE DEFENSE ISSUES EXHIBITS ARE A PROBLEM

25   WHERE YOU GET AB, AB DASH -- IT GETS REALLY CONFUSING IF YOU

1   MAKE THEM USE LETTERS AND SOMETIMES YOU TELL ME IF THIS WILL

2   WORK.  WE CAN SIMPLY ALL PLAINTIFFS EXHIBITS CAN BE JUST P1,

3   P2, P3 AND ALL THE DEFENSE COULD BE D1, D2, D3.  THAT IS A

4   SUGGESTION.  I GUESS ANOTHER SUGGESTION WOULD BE TO JUST GIVE A

5   BLOCK OF NUMBERS, PLAINTIFF GETS ONE TO 100, DEFENSE GETS TWO.

6   ANYWAY, SOME SIMPLE WAY ESPECIALLY WITH THIS NUMBER OF

7   EXHIBITS.  SO WHAT DO YOU THINK, JUST P1, D1.

8           MR. HICKS:  IF I MAY, YOUR HONOR, I FIND IT EASIER IF

9   WE DID THE BLOCK OF NUMBERS, SO PLAINTIFF FOR EXAMPLE, 1

10  THROUGH 100 AND MAYBE DEFENSE 101 TO 200?

11          THE COURT:  WOULD THE 1 TO A 100 BE PLENTY FOR YOU?

12          MR. HICKS:  I'M PRETTY SURE.  LET ME DOUBLE CHECK.

13          MR. SANCHEZ:  YOUR HONOR, THE REASON I'M INCLINED TO

14  USE THE P1 AND THE D1 IS THAT SOMETIMES INDIVIDUALS SEE

15  NUMBERS IN TERMS OF ONE THROUGH 100, BELONGING TO

16  THE PLAINTIFF, AND 200 TO 300 BELONGING TO THE DEFENDANT, THEY

17  IMPUTE SOME MEANING IN TERMS OF PRIORITIZATION AND WEIGHTINESS

18  JUST TO THE NUMBER OF ASSIGNMENT.

19          THE COURT:  I HAVE ENCOUNTERED THAT TOO IN A

20  DIFFERENT WAY.  I CAN RECALL MENTIONING TO THE JURY THAT

21  EXHIBIT 450, AND THEY HAVE A HEART ATTACK THINKING THERE'S

22  GOING TO BE 450 EXHIBITS WHEN IN REALITY, THERE IS ONLY GOING

23  TO BE LIKE 11.  ALL RIGHT.  I THINK IT WOULD BE SIMPLER AND

24  EASIER AND LESS DAUNTING TO EVERYBODY IF WE JUST DID THE P1,

25  D1 THING.

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 13 of 45

1    MR. HICKS:  YES, YOUR HONOR.

2    THE COURT:  THEN YOU CAN DO P1.1 OR P1.2, OR WHATEVER

3    IF YOU HAVE SUB EXHIBITS OR PHOTOGRAPHS.  THE LETTERS SEEM TO

4    BE THE ISSUE WHEN YOU GET TO DOUBLING OR TRIPLING UP ON

5    THE LETTERS.  LET'S DO THAT.  P1 AND D1.

6    MR. HICKS:  YES, YOUR HONOR.

7    THE COURT:  ANY -- ON YOUR EXHIBIT LIST AND I GUESS I

8    HAVEN'T LOOKED AT IT IN THE LAST FEW MINUTES, THERE ARE SOME

9    POTENTIAL OBJECTIONS LISTED.  ARE THERE ANY BIG EVIDENTIARY

10   ISSUES OR EXHIBIT ISSUES OR OBJECTION ISSUES THAT WE COULD

11   RESOLVE NOW TO SAVE A LOT OF TIME?

12   ANY GENERIC OBJECTIONS OR ISSUES KIND OF RUNNING

13   THROUGHOUT WE CAN GET AT?  I GUESS I DON'T HAVE ANY SPECIFICS

14   IN MIND.  I HAVE GOT TO LOOK AT YOUR FILES HERE.  DO YOU

15   ANTICIPATE A BUNCH OF ISSUES WITH REGARD TO EXHIBITS OR

16   ADMISSIBILITY ISSUES?

17   MR. HICKS:  I DON'T, YOUR HONOR.

18   IN MY EXPERIENCE, WE'LL USUALLY BE OVER-INCLUSIVE IN THE

19   EXHIBITS THAT ARE IN THE BINDER JUST SO FOR EASE TO BE ABLE TO

20   REFRESH THEIR RECOLLECTION ON CERTAIN REPORTS BUT OBVIOUSLY

21   THOSE REPORTS WILL NOT BE ADMISSIBLE OUTSIDE OF SOME SORT OF

22   STIPULATION.

23   I DON'T FORESEE ISSUES WITH ADMISSIBILITY OF RECORDS AND

24   PHOTOS AND DOCUMENTS.

25   THE COURT:  ALL RIGHT.  MR. SANCHEZ, WHAT DO YOU

1   THINK?  WE NOT GOING TO HAVE A PROBLEM?

2        MR. SANCHEZ:  I DON'T ANTICIPATE WE WILL HAVE MUCH OF

3   A PROBLEM WITH THAT.  I'M LOOKING FORWARD TO MEETING WITH

4   COUNSEL TO SEE IF WE CAN ACTUALLY NARROW IT DOWN, WHAT THE

5   EXHIBIT LIST MIGHT BE.

6        THE COURT:  ALL RIGHT.  I'M SURE EVERY JUDGE'S

7   PREFERENCE IS THAT WE JUST AGREE ON WHAT EXHIBITS ARE COMING

8   IN AND THERE ARE NO OBJECTIONS AT TRIAL, THERE IS NO MUSS, NO

9   FUSS, NO HASSLE.  RIGHT?  SO THAT'S AN IDEAL WORLD, I KNOW.

10  BUT TO THE EXTENT THAT YOU CAN MEET AND CONFER AND WORK OUT

11  AHEAD OF TIME WHAT'S COMING IN THAT WOULD BE HELPFUL TO

12  EVERYBODY AND HELPFUL TO YOU AND ELIMINATE A LOT OF HASSLING

13  AROUND IN FRONT OF THE JURY.  SO I'LL JUST RELY UPON YOU

14  FOLKS.  YOU ARE EXPERIENCED LAWYERS.  YOU KNOW WHAT COUNTS AND

15  WHAT DOESN'T AND HOPEFULLY, WE CAN AVOID THE SMALL STUFF AND

16  GET TO IT.

17       TO THE EXTENT YOU CAN DO THAT, THAT WOULD BE HELPFUL.  IF

18  NOT, WE'D MUDDLE THROUGH IT AT TRIAL.  ALL RIGHT.  THAT'S IT ON

19  THE EXHIBITS.

20       MR. SANCHEZ:  YOUR HONOR, MAY I MENTION SOMETHING?  I

21  THINK IN THE RULES FOR THE MANNER IN WHICH THE CASE IS TO BE

22  CONDUCTED AND CORRECT ME IF I'M WRONG, I'M SURE YOU WILL, THAT

23  WITH RESPECT TO EXHIBITS, THE COURT ALLOWS THE EXHIBITS TO

24  ACTUALLY BE PUBLISHED TO THE JURY BEFORE A RULING ON IT'S

25  ADMISSIBILITY?

1    THE COURT:  I'M PROBABLY GOING TO HAVE TO CHANGE

2 THAT.  IN AN IDEAL WORLD, WHAT I ENCOURAGE THE LAWYERS TO

3 DO -- LET ME STEP BACK.  WHAT I LIKE TO DO IS AVOID HASSLING

4 OVER EVIDENTIARY OBJECTIONS IN FRONT OF THE JURY.  SOMEBODY

5 OFFERS SOMETHING, SOMEBODY OBJECT AND THEN WE'RE CREATING

6 LAWYER JOKES, RIGHT?  WE ARE ARGUING ABOUT SOMETHING IN FRONT

7 OF THE JURY.

8    UNDERSTANDING THAT THE LAWYERS KNOW AHEAD OF TIME WHAT

9 THE EXHIBITS ARE AND WHAT THE ISSUES ARE; HOPEFULLY, THEY HAVE

10 REACHED SOME UNDERSTANDING BETWEEN THEMSELVES.  WHAT I'D LIKE

11 TO SEE HAPPEN, IF IT IS POSSIBLE AND IT IS NOT ALWAYS POSSIBLE,

12 MAYBE THIS IS THE GENESIS OF THAT RULE OR THAT SUGGESTION, I'D

13 LIKE FOR THERE TO BE NO EVIDENTIARY OBJECTIONS BUT OBVIOUSLY,

14 BEFORE WE SHOW SOMETHING TO THE JURY, WE NEED TO KNOW EITHER

15 IT'S AGREED OR WE'LL DEFER IT UNTIL THE JUDGE CAN RULE.

16    WHAT I LIKE TO SEE IS LET'S SAY YOU WANT TO SHOW

17 SOMETHING TO THE JURY, YOU FIRST GOING TO SHOW IT TO

18 MR. SANCHEZ AND HE'S GOING TO GO LIKE THAT OR LIKE THAT, RIGHT?

19 IF HE SAYS IT'S OKAY, YOU SHOW IT TO THE JURY AND AT THE END OF

20 THE DAY OR THE END OF THE CASE, WE FORMALLY ADMIT IT INTO

21 EVIDENCE.  IF HE SAYS NO, WE DEFER AND AT THE NEXT BREAK WE

22 FIGURE IT OUT AT THE NEXT BREAK.  HOPEFULLY WE CAN MOVE THROUGH

23 THE EVIDENTIARY STUFF WITHOUT STOPPING EVERY FIVE SECONDS TO

24 DEAL WITH OBJECTIONS.

25    SOME CASES DON'T LEND THEMSELVES TO THAT.  A LOT OF THEM

Case 3:13-cv-01166-MMA-RBB   Document 74   Filed 05/22/15   Page 16 of 45

1   DO AND I'M THINKING THIS ONE MIGHT, SINCE THERE APPARENTLY

2   AREN'T TOO MANY ISSUES WITH REGARD TO THE --

3          MR. SANCHEZ:   THE DOCUMENTS LISTED BY THE PLAINTIFFS

4   ARE ESSENTIALLY THE DOCUMENTS WE LISTED.   ESSENTIALLY IT WAS

5   COPY AND PASTE BUT I THINK YOUR HONOR'S SUGGESTION FALLS

6   WITHIN THE PERIMETERS OF SUGGESTING THAT WE MEET EITHER IN

7   PERSON AND DETERMINE WHAT EXHIBITS ARE MUTUALLY ACCEPTABLE FOR

8   ADMISSION AT THE TIME OF TRIAL.   THAT WOULD WORK REALLY WELL

9   WITH RESPECT TO THE OPENING STATEMENT, WITH RESPECT TO

10  ANYTHING ONE OR THE OTHER SIDE PROPOSES TO SHOW TO THE JURY

11  DURING OPENING.   ALTHOUGH I'M SURE THE COURT HAS YOUR OWN

12  APPROACH TO NOTHING IS SHOWN TO THE JURY DURING OPENING OR --

13         THE COURT:   YEAH.   THAT'S ANOTHER ITEM ON THE AGENDA

14  THAT IS TRUE.   NOBODY IS GOING TO SHOW ANYTHING TO THE JURY

15  UNLESS YOU'VE AGREED IN ADVANCE OR I HAVE GOTTEN IN THE ACT

16  AND SAID IT'S OKAY.   THAT WILL BE PART OF THIS PROCESS.   WHAT

17  I'LL HAVE YOU DO IS YOU'LL COME IN EARLY THAT DAY AT 8:30 AND

18  WE'LL, THIS WILL BE PART OF THAT AGENDA TO FOLLOW-UP ON

19  THE EVIDENTIARY THINGS.

20      SO I THINK MAYBE AT THIS POINT, I'LL LEAVE IT UP TO YOU

21  FOLKS TO SEE IF YOU CAN FIGURE IT OUT AMONG YOURSELVES AND KEEP

22  THE JUDGE OUT OF IT.   THE LESS I GOT TO DO, THE BETTER.   RIGHT?

23  LET YOU FOLKS HANDLE IT.   SO IF YOU CAN WORK THE EVIDENTIARY

24  ISSUES OUT AND AGREE ON THE STUFF COMING IN, THAT'S GREAT.   IF

25  YOU CAN'T, THE WAY WE WILL DO IT AT TRIAL, WE WON'T SHOW OR

Case 3:13-cv-01166-MMA-RBB   Document 74   Filed 05/22/15   Page 17 of 45

1   PUBLISH ANYTHING TO THE JURY UNTIL WE KNOW WHAT'S COMING IN.

2   OKAY?  IF THERE'S SOME ISSUE, WE WILL DEFER ON THAT AND GET TO

3   IT AT THE NEXT BREAK.  AND OBVIOUSLY BY THE TIME IT'S OPENING

4   STATEMENT, WE'LL KNOW WHAT THE ISSUES ARE AND WE WILL WORK

5   THOSE OUT.

6        PROPOSED PRE-TRIAL ORDER.  WE HAVE THE ORDER DONE AFTER

7   THE CONFERENCE.  IT DOESN'T SEEM TO MAKE MUCH SENSE TO DO THE

8   ORDER BEFORE THE CONFERENCE.  I GUESS TYPICALLY, WE WILL GET A

9   SCHEDULING ORDER OUT AT THE IN LIM AND WHAT DID WE DO, LIKE A

10  WEEK BEFORE TRIAL?

11        MR. SANCHEZ:  PRESENTLY, YOUR HONOR, YOU HAVE IT

12  SCHEDULED TO BE PROVIDED TO CHAMBERS ON THE 29TH OF MAY.

13        THE COURT:  OKAY.  THAT SHOULD WORK.  WE'LL GET OUR

14  PRE-TRIAL FILINGS.  HAVE WE ALREADY DONE THIS JURY

15  INSTRUCTIONS, EQUIPMENT ORDERS, PROPOSED VOIR DIRE QUESTIONS?

16        MR. SANCHEZ:  THE JURY INSTRUCTIONS ARE DUE ON

17  THE SAME DATE, MAY 29 AND EQUIPMENT ORDERS, BOTH SIDES HAVE

18  SUBMITTED A REQUEST TO BRING IN SOME EQUIPMENT WHICH I ASSUME,

19  YOUR HONOR.

20        THE COURT:  GOD KNOWS, YOU DON'T WANT TO SHARE

21  ANYTHING?

22        MR. HICKS:  ACTUALLY, WE'RE GOING TO SHARE.

23        MR. SANCHEZ:  ACTUALLY THEY DID ASK IF THEY CAN SHARE

24  SOME OF OUR EQUIPMENT, WE CERTAINLY AGREED.  THEY WANTED AN

25  ELMO, WE WEREN'T GOING TO USE ONE BUT WE HAVE ONE AT

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 18 of 45

1    THE OFFICE, WE'LL CERTAINLY BRING IT IN.

2           THE COURT:  I WAS KIDDING.  YOU HAVE SEEN THE DEAL

3    WHERE I'M NOT GOING TO LET YOU USE MY STUFF.  EVERYBODY HAS TO

4    USE THEIR OWN STUFF.

5           MR. SANCHEZ:  I'VE BEEN FORTUNATE ENOUGH NOT TO HAVE

6    ENCOUNTERED THAT.

7           THE COURT:  ALL RIGHT.  THOSE ITEMS HAVE ALREADY BEEN

8    TAKEN CARE OF.  THE HANDOUTS, HAVE WE GIVEN YOU OUR LITTLE

9    COURT HANDOUTS?

10          MR. HICKS:  I HAVEN'T SEEN ONE, YOUR HONOR, SO.

11          THE COURT:  I'M SORRY.  I'M AHEAD OF THE GAME.  I

12   HAVE THEM RIGHT HERE.  THESE ARE GENERAL GUIDELINES ON

13   PROCEDURES.  WE PROBABLY DID THIS LAST TIME.

14          MR. SANCHEZ:  YES, YOUR HONOR.

15          THE COURT:  I FORGOT.  WE HAVE BEEN HERE BEFORE.  I

16   DON'T THINK THERE'S ANYTHING REMARKABLE OR CONTROVERSIAL IN

17   THERE.  THAT'S JUST GENERALLY HOW WE DO THINGS, HOW WE PICK

18   THE JURY, GENERAL GUIDELINES.  YOU'LL READ THOSE OVER AND

19   AGAIN, THAT WILL BE THE TOPIC OF THE LITTLE PRE-TRIAL

20   CONFERENCE ON THE MORNING OF TRIAL TO SEE IF THERE'S ANY

21   ISSUES THERE.

22          I GUESS GENERALLY JUST ABOUT PICKING THE JURY, TYPICALLY

23   WE -- UNLESS THERE'S SOMETHING, MAYBE THIS MIGHT BE.  MAYBE WE

24   SHOULD CHAT ABOUT THIS NOW.  IN TERMS OF THE SIZE OF THE PANEL.

25   TYPICALLY, WE CALL IN -- WHAT DO WE CALL IN 20 OR 25?

1          THE CLERK:  TWENTY, YOUR HONOR.

2          THE COURT:  WE CALL IN 20.  THE IDEA BEING YOU EACH

3   GET THREE PEREMPTORIES PER SIDE, THE IDEA THAT WILL END UP

4   WITH A JURY OF EIGHT AS YOU KNOW, WE NEED SIX.  NO FORMAL

5   ALTERNATES BUT WE WILL HAVE A COUPLE EXTRAS JUST IN CASE.  SO

6   THAT WOULD BE THE PRELIMINARY THOUGHT.  WHAT ABOUT THAT?  IS

7   THAT GOING TO BE WORKABLE FOR A CASE LIKE THIS?

8          MR. HICKS:  YOUR HONOR, I DID WANT TO INQUIRE INTO

9   THE COURT.  GIVEN THE FACT THAT IS A WRONGFUL DEATH CASE,

10  EXCESSIVE FORCE CASE AND OBVIOUSLY WITH THE ENVIRONMENT RIGHT

11  NOW GOING ON WITH POLICE MISCONDUCT AND IT'S ALWAYS BEEN

12  OBVIOUSLY A POLARIZING ISSUE BUT I THINK EVEN MORE SO NOW

13  GIVEN THE MEDIA BEHIND THESE CASES.  I'M WONDERING IF YOUR

14  HONOR THINKS WE'LL NEED MAYBE A FEW MORE THAN NORMAL AND I WAS

15  GOING TO ACTUALLY ASK AS WELL AS WHEN WE HAVE THE OPPORTUNITY

16  TO VOIR DIRE THE JURY, IF WE WOULD BE ALLOWED A LITTLE MORE

17  TIME TO DEAL WITH THOSE ISSUES AS WELL.

18          THE COURT:  LET'S TAKE THOSE IN ORDER.  I APPRECIATE

19  THAT MAYBE THIS CASE BECAUSE OF RECENT EVENTS MIGHT ENGENDER A

20  LITTLE MORE CONVERSATION WITH THE JURORS.  WE CAN INCREASE

21  THE NUMBER OF PEREMPTORIES BY STIPULATION.  WOULD IT BE YOUR

22  THOUGHT THAT YOU'D WANT MORE THAN THREE PER SIDE, LIKE FOUR

23  PER SIDE?

24          MR. HICKS:  THAT WOULD BE THE PLAINTIFFS DESIRE, YOUR

25  HONOR.

Case 3:13-cv-01166-MMA-RBB   Document 74   Filed 05/22/15   Page 20 of 45

1        MR. SANCHEZ:  I HAVE NO STRONG FEELING EITHER WAY,

2    YOUR HONOR.

3        THE COURT:  LET'S GIVE YOU ONE EXTRA, FOUR PER SIDE

4    AND THERE'S A CHANCE WE MIGHT LOSE, I SUPPOSE BECAUSE OF THE

5    NATURE, I HAVEN'T THOUGHT THIS THROUGH, BECAUSE OF RECENT

6    EVENTS, MAYBE WE CAN CALL IN A TOTAL OF 24.  PATRICIA,

7    THINKING OFF THE TOP OF MY HEAD AND MAYBE INCREASE

8    THE ULTIMATE DELIBERATING PANEL TO TEN, SINCE BECAUSE OF THE

9    LENGTH OF THE TRIAL?  THAT CUTS BOTH WAYS.  WE NEED A

10   UNANIMOUS VERDICT BUT GIVEN THE LENGTH OF THE TRIAL, THERE'S A

11   CHANCE WE MIGHT LOSS A COUPLE.

12       OH WE TIME SCREEN ALREADY.  WE SHOULD NOT HAVE A PROBLEM

13   BUT WE'RE CALLING A PANEL OF 20.  RIGHT?  SO WE HAVE 20 FOLKS

14   WHO HAVE BEEN TIME SCREENED AND THEY HAVE TOLD US THEY COULD

15   GIVE US THE TIME.  THAT'S NO PROBLEM.  WHAT ABOUT THE

16   TYPICALLY, WE SIT A JURY OF EIGHT; OBVIOUSLY, NEEDING A MINIMUM

17   OF SIX.  WHAT DO YOU THINK ABOUT THAT?  IS THAT GOING TO WORK

18   FOR A CASE LIKE THIS?

19       MR. HICKS:  I AGREE WITH THAT, YOUR HONOR.  I WAS

20   MORE CONCERNED WITH HAVING A FEW EXTRA MINUTES IF POSSIBLE

21   DURING THE JURY SELECTION PROCESS VERSUS JUST INCREASING IT

22   FROM EIGHT TO TEN.

23       THE COURT:  SO WE'LL SIT A PANEL OF EIGHT, AS WE

24   DISCUSSED.  WE'LL GIVE YOU EACH AN EXTRA STRIKE SO YOU'LL EACH

25   HAVE FOUR STRIKES.

Case 3:13-cv-01166-MMA-RBB  Document 74  Filed 05/22/15  Page 21 of 45

1      IN TERMS OF TIME FOR VOIR DIRE, TYPICALLY I'M THINKING 15

2  TO 20 MINUTE PER SIDE IN A CIVIL CASE.  THE WAY WE DO IT HERE,

3  WE PUT THE FIRST 14 IN THE BOX AND THE REST IN THE AUDIENCE YOU

4  ARE GOING TO BE ABLE TO TALK TO ALL OF THEM, RIGHT?  NOT JUST

5  14 IN THE BOX.  SO AGAIN, MY THOUGHT TYPICALLY IS 15 TO 20

6  MINUTES.  GETTING BACK TO YOUR THOUGHT, IS THAT NOT ENOUGH TIME

7  FOR YOU CONSIDERING?

8      MR. HICKS:  I WOULD ASK FOR 25 TO 30.

9      THE COURT:  SEE, IF I SAID 30 HE WOULD SAY GIVE ME 35

10  OR 40.  RIGHT?  HE MUST THINK HE'S LIKE IN STATE COURT.

11      MR. SANCHEZ:  IN STATE COURT, YOU GET TO TALK AS LONG

12  AS YOU WANT TO TALK BASICALLY.

13      MR. HICKS:  WELL THAT'S CHANGED, BUT JUST YOUR HONOR,

14  WITH ALL OF THE CASES OUT RIGHT NOW, WITH THE MICHAEL BROWN'S

15  AND THOSE SHOOTING DEATHS, IT'S A VERY, VERY SENSITIVE TOPIC

16  AND I WOULD RATHER ERR ON THE SIDE OF CAUTION HAVING A LITTLE

17  MORE TIME JUST TO DEAL WITH THE EMOTIONS OF THE JURORS AS IT

18  RELATES TO THIS TOPIC.  BUT WHATEVER THE COURT ALLOWS,

19  OBVIOUSLY.

20      THE COURT:  THEY TELL ME I'M IN CHARGE HERE UNTIL I

21  GO HOME AT NIGHT, YOU KNOW, AND THEN I WANT TO DO SOMETHING

22  THAT MAKES SENSE AND THAT'S FAIR FOR BOTH SIDES SO WHAT IF WE

23  WERE TO GIVE YOU BOTH 30 MINUTES MAXIMUM OUTSIDE FOR VOIR

24  DIRE?

25      MR. HICKS:  THANK YOU, YOUR HONOR.

1    MR. SANCHEZ:  YOUR HONOR, WITH RESPECT TO COUNSEL'S

2  VOIR DIRE, I NOTE THAT IN OUR PREVIOUS APPEARANCE, YOUR HONOR

3  WANTED THE PROPOSED VOIR DIRE  QUESTIONS SUBMITTED TO THE

4  COURT BY THE 26TH.  I THINK THAT THAT IS SOMETHING THAT SHOULD

5  BE SUBMITTED TO THE COURT AND TO PARTIES BECAUSE OF THE

6  DIFFICULTY THAT WE MIGHT ENCOUNTER WITH RESPECT TO CURRENT

7  EVENTS AND CONSTANT QUESTIONING OF THE PANEL WITH RESPECT TO

8  CURRENT EVENT ISSUES IS SORT OF PRE CONDITIONING THEM AND

9  ADDRESSING OR REINFORCING SOCIAL PREJUDICES AND BIASES.

10    SO I WOULD SAY IF THERE'S VOIR DIRE THAT'S BEING

11  ANTICIPATED TO ADDRESS CURRENT EVENTS BY PLAINTIFFS COUNSEL TO

12  A GREATER DEGREE THAN THOSE PROPOSED QUESTION AREAS SHOULD BE

13  SUBMITTED TO THE COURT FOR APPROVAL.

14    THE COURT:  RIGHT.  I THINK THAT'S RIGHT.  THAT'S

15  ANOTHER ITEM ON THE AGENDA HERE.  SOMETHING WE'LL TALK ABOUT

16  THE MORNING OF TRIAL.  I THINK THAT'S THE  SUBJECT OF THE HAND

17  OUT.  MAYBE YOU HAVEN'T SEEN IT YET.

18    THE TYPES OF QUESTIONS WE WOULD EXPECT ON VOIR DIRE.

19  THIS COURT PROBABLY TAKE A LITTLE MORE CONSERVATIVE VIEW THAN

20  SOME OTHERS.  ONE ISSUE WE OFTEN SEE BECOME A PROBLEM IS PRE

21  CONDITIONING THE JURY OR ARGUING THE CASE IN OPENING STATEMENT,

22  I MEAN IN JURY SELECTION, WHICH CAN BE A PROBLEM.  SO I THINK

23  IT'S GOING TO BE IMPORTANT THAT WE SORT OF TRY TO GET ON

24  THE SAME PAGE UP FRONT, FIGURE OUT ARE THE LINE IS SO WE CAN

25  STAY BEHIND THE LINE AND NOT GET INTO TROUBLE WITH JURY

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 23 of 45

1  SELECTION, OBJECTIONS BEING SUSTAINED AS I'M SURE YOU AGREED,

2  IT'S TROUBLING WHEN YOU STEP UP THE FIRST TIME YOU GET TO TALK

3  TO THE JURORS, SOMEBODY OBJECTS.  THE JUDGE SUSTAINS IT.  IT

4  KIND OF INTERRUPTS THE RHYTHM.

5      SO WE WANT TO AVOID THAT.  AGAIN, IN A PERFECT WORLD IT

6  WOULD BE NICE TO GET ALL THE WAY THROUGH JURY SELECTION WITHOUT

7  ANY OBJECTIONS AND ONE WAY TO TRY TO DO THAT IS TO TRY TO HAVE

8  AN UNDERSTANDING UP FRONT AS TO WHAT'S PERMISSIBLE AND WHAT

9  ISN'T.  SO THAT'S PART OF THE REASON WE LIKE TO, IF THERE'S

10  ANYTHING CONTROVERSIAL OR MAYBE YOU WANT ME TO COVER, THAT'S

11  WHAT I'D LIKE YOU TO SUBMIT IN ADVANCE AND WE'LL TALK MORE

12  ABOUT THAT ON THE MORNING OF TRIAL.

13      MR. HICKS:  YES, YOUR HONOR.

14      THE COURT:  BUT I THINK JUST GENERALLY, OBVIOUSLY

15  THERE'S A POTENTIAL HERE BECAUSE OF WHAT'S HAPPENED, TO GET

16  INVOLVED IN SOME KIND OF PHILOSOPHICAL OR EMOTIONAL DISCUSSION

17  WITH JURORS AND KIND OF GO OFF THE RESERVATION HERE AND GET

18  WAY FAR AFIELD OF WHERE WE NEED TO BE IN JURY SELECTION.  WE

19  WANT TO AVOID THAT.  I THINK TO CUT IT BACK IS CERTAINLY FAIR

20  GAME, RIGHT, TO MAKE SOME MENTION OF WHAT'S HAPPENED RECENTLY

21  AND WHETHER ANY OF THESE JURORS ARE AFFECTED BY THAT.  IS THAT

22  GOING TO IMPAIR THEIR ABILITY TO BE FAIR AND IMPARTIAL AND DO

23  THEY HAVE STRONG FEELINGS ABOUT THESE TOPICS, RIGHT?  THAT'S

24  ALL FAIR GAME.  SOMETHING YOU WILL NEED TO KNOW AND I WILL

25  HAVE COVERED THAT UP FRONT.  WHAT I TRY TO DO IN MY INITIAL

1    PRESENTATION IS COVER AREAS THAT I THINK YOU WANT TO KNOW

2    ABOUT, ELICIT OPINIONS AND EXPERIENCES YOU WANT TO KNOW ABOUT.

3    I DON'T ALWAYS ALL THE RIGHT QUESTIONS.  YOU WILL HAVE AN

4    OPPORTUNITY TO FOLLOW-UP AND ASK WITHIN LIMITS.

5         I THINK BY THE TIME YOU GET TO QUESTION, MOST OF THE

6    STUFF WILL BE OUT THERE SO HOPEFULLY, IT WON'T BE A PROBLEM.

7    I'M SPEAKING BLINDLY NOW BECAUSE I DON'T WANT WHAT YOU WANT TO

8    ASK AND WHETHER WE'RE GOING TO HAVE AN ISSUE.  SO IF YOU CAN

9    SUBMIT TO ME COPIES OF ANY PROPOSED QUESTIONS THAT EITHER YOU

10   WANT ME TO ASK OR YOU WANT TO ASK, THAT WOULD BE HELPFUL.

11             MR. HICKS:  YES, YOUR HONOR.

12             THE COURT:  ALL RIGHT.  MOTIONS.  I'M DOWN TO THE

13   MOTION IN LIMINE ON MY AGENDA.  ANYTHING ELSE TO DISCUSS ABOUT

14   STUFF WE JUST NOW TALKED ABOUT?  ANYTHING ELSE ON JURY

15   SELECTION?

16             MR. HICKS:  NOT FROM PLAINTIFF, YOUR HONOR.

17             THE COURT:  ALL RIGHT.  THE MOTIONS IN LIMINE.  I'VE

18   GOT, I THINK WE ACTUALLY GOT HERE LAST TIME.  I GOT SOME

19   TENTATIVES.  WE ISSUED TENTATIVES LAST TIME AND TENTATIVES

20   HAVEN'T CHANGED.  I'LL GO THROUGH THEM AND SEE WHAT ARGUMENT

21   WE NEED TO PRESENT, IF ANY.

22        WE'LL GO THROUGH PLAINTIFFS MOTIONS FIRST.  PLAINTIFF

23   FILED TWO WRITTEN MOTIONS IN LIMINE.

24        THE FIRST WAS TO EXCLUDED EVIDENCE OF MARIJUANA IN THE

25   DECEDENT'S SYSTEM.  I'M PARAPHRASING THE TITLE OF THE MOTIONS

1  HERE.  THE TENTATIVE WOULD BE TO RESPECTFULLY DENY THE MOTION.

2  I RECOGNIZE OF COURSE, THE  REASON FOR THE MOTION AND THE

3  POTENTIAL THERE MIGHT BE SOME PREJUDICE THERE.  BUT IT SEEMS

4  THAT, IT NOT SEEMS, IT'S A SURE THING THERE I GUESS THAT

5  MR. WHITE'S BEHAVIOR ON THE DAY IN QUESTION IS A SIGNIFICANT

6  ISSUE.

7       THERE IS NINTH CIRCUIT CASE LAW SUPPORTING THIS TYPE OF

8  EVIDENCE IN EXCESSIVE FORCE CASES WHERE THE DEFENDANT'S

9  BEHAVIOR IS IN ISSUE.  WHILE THERE MIGHT BE SOME PREJUDICE FROM

10 THAT EVIDENCE, IT DOES NOT SEEM TO ME THAT IT WOULD

11 SUBSTANTIALLY OUTWEIGH THE PROBATIVE VALUE UNDER RULE 403.

12      I GUESS I WOULD SAY, I THINK TIMES HAVE CHANGED IN THIS

13 DAY AND AGE.  THE FACT THAT SOMEBODY MIGHT HAVE BEEN SMOKING

14 MARIJUANA IS SORT OF A NON EVENT.  RIGHT?  IT HAS BECOME

15 DECRIMINALIZED AND IT IS NOT A BIG DEAL.  SO I'M NOT SURE ANY

16 PREJUDICE THAT WOULD COME FROM THAT EVIDENCE WOULD BE SO

17 SUBSTANTIAL THAT IT WOULD OUTWEIGH ANY POTENTIAL PROBATIVE

18 VALUE.

19      SO THAT'S THE COURT'S TENTATIVE THOUGHT ON THAT AND WE

20 WILL TALK MORE ABOUT THAT IN A MOMENT.

21      THE SECOND NOTICE WAS TO EXCLUDE EVIDENCE OF MR. WHITE'S

22 PRIOR BAD ACTS.  THE COURT'S TENTATIVE WAS TO DEFER ON THAT

23 UNTIL I HAD MORE INFORMATION ABOUT EXACTLY WHAT'S IN ISSUE.

24 HIS ACTIONS IMMEDIATELY PRIOR TO THE INCIDENT WOULD, IN THE

25 COURT'S VIEW, SEEM TO BE CLEARLY RELEVANT AND ADMISSIBLE UNDER

1    404 B.  BUT IF THERE'S SOME PRIOR MISDEMEANOR ARREST OR

2    CONVICTION OR ARREST OR SOMETHING, UNRELATED MISCONDUCT THAT

3    WOULD PROBABLY NOT BE RELEVANT OR NOT ADMISSIBLE HERE.  I'M NOT

4    SURE THAT'S WHAT WE'RE TALKING ABOUT.

5         THAT'S IT FOR THE PLAINTIFF'S TWO WRITTEN MOTIONS.  LET'S

6    GO BACK TO NUMBER ONE, EVIDENCE OF EXCLUDING EVIDENCE OF

7    MARIJUANA.  PLAINTIFF CARE TO ARGUE THAT ONE FURTHER?

8         MR. HICKS:  YOUR HONOR, BRIEFLY AS IT RELATES TO

9    ISSUE REGARDING MARIJUANA, I DO UNDERSTAND THE POSITION AS IT

10   RELATES TO THE DAMAGES VERSUS LIABILITY.  I THINK MORE OF A

11   CONCERN FOR US IS GIVING THE NATURE BY WHICH MR. WHITE WAS

12   ACTING, WHICH IS OBVIOUSLY GOING TO BE AT ISSUE WHEN

13   THE OFFICERS TALK ABOUT WHAT WAS IN THEIR STATE OF MIND.  MY

14   CONCERN IS THAT THERE BE AN ARGUMENT THAT BECAUSE THERE WAS

15   MARIJUANA FOUND IN HIS SYSTEM, HE WAS ACTING A SPECIFIC WAY.

16        I THINK THAT WOULD BE MUCH MORE PREJUDICIAL.  I DO

17   UNDERSTAND HOW THE ISSUE OF CONSUMPTION OF MARIJUANA GOES TO

18   DAMAGE ISSUES.  BUT IF THERE'S GOING TO BE AN ARGUMENT THAT

19   MARIJUANA MAKES YOU ACT A CERTAIN WAY, SPECIFICALLY VIOLENT.  I

20   DON'T THINK THAT THE WITNESSES THAT THEY HAVE WOULD BE ABLE TO

21   LAY THAT FOUNDATION.  SO THAT WAS MUCH MORE OF MY CONCERN WITH

22   THE INTRODUCTION OF MARIJUANA.

23        THE COURT:  ALL RIGHT.  I THINK THERE IS A LEGITIMATE

24   CONCERN IN THERE TO THE EXTENT WE GOT TO SOME EXPERT

25   TESTIMONY, EXPERT MEDICAL, PSYCHIATRIC OR PHARMACOLOGICAL

1    TESTIMONY WHEN WE DON'T HAVE SUCH AN EXPERT DESIGNATED.  IT

2    WASN'T MY UNDERSTAND THAT THEY WERE INTENDING TO GO THERE.

3    MR. SANCHEZ, WHAT DO YOU THINK?

4          MR. SANCHEZ:  YOUR HONOR, WE ACTUALLY WERE GOING TO

5    USE THE MARIJUANA WITH RESPECT TO HIS DAMAGES CLAIM.  AS FAR

6    AS MARIJUANA HAVING A TENDENCY TO MAKE PEOPLE ACT OUT

7    VIOLENTLY, NO.  WE'RE NOT AWARE OF ANY SUCH INFORMATION BUT

8    MARIJUANA DOES IN FACT IMPAIR JUDGMENT.  SO IT WOULD BE

9    RELEVANT TO EXPLAIN TO A CERTAIN EXTENT, THAT HE WAS

10   EXERCISING QUESTIONABLE JUDGMENT, PERHAPS BECAUSE OF THE

11   CONSUMPTION OF MARIJUANA.

12         THE COURT:  I SUPPOSE -- I DON'T KNOW WHAT

13   THE TESTIMONY IS GOING TO BE, BUT IT MAYBE THAT SOME OFFICER

14   MAY TESTIFY THAT PART OF THEIR TRAINING HAD TO DO WITH DEALING

15   WITH PEOPLE UNDER THE INFLUENCE OF VARIOUS DRUGS.  THEY MAY

16   HAVE BEEN TRAINED THAT SOME PEOPLE EVIDENCE CERTAIN BEHAVIORS

17   AS RESULT OF CONSUMING CERTAIN DRUGS.  I THINK THAT MIGHT BE

18   RELEVANT.  WHAT I THINK YOUR CONCERN WAS YOU DON'T WANT

19   SOMEBODY GIVING MEDICAL OR EXPERT OR PHARMACOLOGICAL OR

20   TESTIMONY LIKE THAT, RIGHT?

21         MR. HICKS:  CORRECT.  EVEN THROUGH THE OFFICERS

22   AGAIN, I UNDERSTAND IF THE OFFICERS DISCUSS HOW THEY'RE

23   TRAINED ON HOW TO RECOGNIZE IF SOMEONE MAY BE UNDER

24   THE INFLUENCE OF MARIJUANA, THE SMELL, THE RED EYES, SOMETHING

25   OF THAT NATURE, BUT I THINK IF THE OFFICERS TRY TO GO THE NEXT

1    STEP FURTHER AND SAY BECAUSE THERE WAS MARIJUANA IN HIS SYSTEM

2    THAT THEY DIDN'T FIND OUT UNTIL AFTER THE INCIDENT THROUGH A

3    TOXICOLOGY REPORT, THAT EXPLAINS THE REASON WHY HE ACTED IN A

4    CERTAIN FASHION.  I THINK THAT GOES OUTSIDE OF THOSE OFFICER'S

5    EXPERTISE.

6         THE COURT:  I THINK IT PROBABLY DOES.  DO YOU AGREE,

7    MR. SANCHEZ?

8         MR. SANCHEZ:  AT THIS POINT, WITHOUT HEARING WHAT

9    THE OFFICERS RECOGNITION TESTIMONY  WOULD BE, IT WOULD BE

10   DIFFICULT FOR ME TO AGREE OR DISAGREE WITH THAT.  I THINK

11   THAT'S AN APPROPRIATE MATTER AND APPROPRIATE MATTER ON THIS

12   PARTICULAR ITEM AND SHOULD PERHAPS WAIT UNTIL HE TESTIMONY IS

13   PROVIDED.  I THINK WE HAVE CONCESSION THAT IT IS ADMISSIBLE

14   FOR PURPOSES OF ASSESSING DAMAGES AND RELATIONSHIP TO FAMILY

15   AND THINGS OF THAT SORT BUT AS TO THIS PARTICULAR CONCERN, I'M

16   NOT IN A POSITION TO AGREE OR DISAGREE.

17        THE COURT:  ALL RIGHT.  I THINK WE PROBABLY EXHAUSTED

18   THAT.  I THINK WE ARE PROBABLY GOING TO HAVE TO WAIT AND SEE

19   BUT GENERALLY, I THINK IT IS GOING TO COME OUT ONE WAY OR

20   ANOTHER THAT HE HAD MARIJUANA IN HIS SYSTEM AND WE I THINK

21   THAT IS APPROPRIATE AND WE WILL HAVE TO APPROPRIATELY DEAL

22   WITH IT AT THE TIME TO SEE IF AT SOME POINT THAT'S GOING OVER

23   SOME LINE.

24        THE SECOND MOTION WAS TO EXCLUDE EVIDENCE OF PRIOR BAD

25   ACTS.  WHAT'S YOUR CONCERN THERE?  YOU THINK SOMETHING SPECIFIC

Case 3:13-cv-01166-MMA-RBB  Document 74  Filed 05/22/15  Page 29 of 45

1    IS GOING COME OUT THAT SHOULD NOT COME OUT?

2          MR. HICKS:  TWO CONCERNS, YOUR HONOR.

3          THE FIRST CONCERN IS BASED ON MY EXPERIENCE, USUALLY THE

4    OFFICERS OR COUNTY COUNSEL HAS MORE ACCESS TO THE RAP SHEET OF

5    THE DECEDENT THAN WE DO BECAUSE WE'RE USUALLY LIMITED BY

6    THE KNOWLEDGE OF THE PARENTS.  TO PREVENT ANY SURPRISE, I WAS

7    HOPING THAT COUNTY COUNSEL WAS NOT INTENDING TO GO INTO ANY

8    MISDEMEANOR OR FELONY CONVICTIONS THAT WE'RE NOT AWARE OF

9    WITHOUT GIVING US NOTICE SO THAT WE COULD THEN OPPOSE

10   THE INTRODUCTION OF THAT.

11         TWO, I UNDERSTAND THAT THE ACTIONS IMMEDIATELY PRECEDING

12   THE CONTACT BY THE OFFICERS IS RELEVANT TO THEIR STATE OF MIND.

13   I GET THAT.  THERE WAS, AND I WAS TRYING TO FIND THE EXACT

14   LANGUAGE, BUT I RECALL IN THE OPPOSITION THERE WAS LANGUAGE TO

15   SUGGEST THAT HE WOULD HAVE BEEN CONVICTED OF HIS ACTIONS, WHICH

16   I THINK IS IMPROPER AND WOULD BE IMPROPER ARGUMENT.  HAD HE NOT

17   BEEN KILLED AND HE WAS ARRESTED OBVIOUSLY, A CRIMINAL TRIAL MAY

18   HAVE ENSUED, THAT COULD HAVE BEEN PLEA BARGAINED BUT TO SUGGEST

19   THAT HE WOULD HAVE BEEN CONVICTED, I THINK IS IMPROPER SO

20   OUTSIDE OF THOSE TWO, I DON'T EXPECT THAT THAT WOULD BE A BIG

21   ISSUE.

22         THE COURT:  ALL RIGHT, MR. SANCHEZ, ANYTHING TO ADD

23    THERE?

24         MR. SANCHEZ:  YES, YOUR HONOR.  WE AGREE THAT HIS

25    ACTION ON THE DAY IN QUESTION ARE CLEARLY RELEVANT.  BUT WITH

1    RESPECT TO THE SUGGESTION THAT IT'S IMPROPER ARGUMENT FOR US

2    TO SUGGEST THAT HAD HE NOT BEEN FATALLY WOUNDED, THAT HIS

3    ACTION ON THE DAY IN QUESTION WOULD HAVE NO BEARING ON THE

4    ASSESSMENT OF DAMAGES, IS I THINK NOT WELL TAKEN. I THINK AN

5    INDIVIDUAL WHO HAS COMMITTED A FELONY ACCORDING TOO, ACCORDING

6    TO THEIR EXPERT, A FELONY ASSAULT WITH A DEADLY WEAPON

7    IMMEDIATELY BEFORE CONTACT WITH THE POLICE OFFICERS, HAD HE

8    NOT BEEN FATALLY WOUNDED, HE WOULD HAVE BEEN PROSECUTED.  THAT

9    WOULD BE ONE OF THE THINGS THAT THE JURY WOULD HAVE TO

10   CONSIDER IF THEY WERE LEANING TOWARDS LIABILITY AND ASSESSING

11   WHAT AMOUNT OF DAMAGES WOULD BE APPROPRIATE TO AWARD TO

12   THE PARENTS.  GIVEN THAT HE WOULD BE ABSENT FOR AN AMOUNT OF

13   TIME WHEN AND IF HE WERE CONVICTED.

14        IF WE DON'T ALLOW THE INFORMATION IN, THEN THE PLAINTIFF

15   GETS TO MAKE THE IMPROPER ARGUMENT THAT HIS BEHAVIOR ON THE DAY

16   IN QUESTION HAS NO PROPER APPLICATION OR BEARING IN DETERMINING

17   WHAT AMOUNT OF DAMAGES THE PARENTS WOULD HAVE INCURRED AS A

18   RESULT OF THE EVENT ITSELF.

19        THE COURT:  WELL I GUESS THE CONCERN IS ANY OPINION

20   HE WOULD HAVE BEEN CONVICTED.  HOW CAN ANYONE SAY THAT?  MAYBE

21   HE WOULD.  OR MAYBE HE WOULDN'T.

22        MR. HICKS:  AND THAT HE WOULD HAVE SERVED TIME.

23        THE COURT:  I THINK ABOUT ALL YOUR FOLKS CAN SAY IN

24   THAT SETTING IS THAT THE BEHAVIOR THEY OBSERVED, HE CERTAINLY

25   WOULD HAVE BEEN CHARGED OR SOMETHING.  HE WOULD HAVE BEEN

1   PROSECUTED, RIGHT?  BUT WHO KNOWS WHAT WOULD HAVE HAPPENED

2   AFTER THAT?  I THINK THAT'S WHERE WE RUN AFOUL, DON'T WE?

3          MR. SANCHEZ:  WE SHOULD ALSO BE ABLE TO EXPLAIN OR

4   PRESENT TESTIMONY THAT FOR THIS KIND OF A CRIMINAL ACT,

5   THE PENALTY THAT WOULD FOLLOW IN THE EVENT OF PROSECUTION.

6          THE COURT:  WELL I THINK WE GOT A PROBLEM THERE TOO

7   BECAUSE THAT'S ALL ACROSS THE BOARD AND I'M AMAZED AT

8   SOMETIMES WHAT I SEE.  EITHER THE EXTENT OR THE LACK THEREOF.

9   WHO KNOWS?  IT'S SO SPECULATIVE, AND AS WE KNOW, IF SOMEBODY

10  SAYS WELL THE MAXIMUM PENALTY FOR THAT IS 20 YEARS.  NOBODY

11  EVER GETS 20 YEARS.  I'M NOT TALKING ABOUT THIS SPECIFIC CASE,

12  I SEE EVERY DAY IN COURT.  YOU LOOK IN THE PLEA AGREEMENT, IT

13  SAYS THE MAXIMUM PENALTY IS 20 YEARS.  HE ACTUALLY GETS

14  NOTHING.  SO TO TELL THE JURY THAT THIS JUSTIFY A SENTENCE OF

15  20 YEARS IS PROBABLY NOT HELPFUL AND MIGHT BE PREJUDICIAL.

16         MR. SANCHEZ:  IT'S EQUALLY AS PREJUDICIAL TO THE

17  DEFENDANTS FOR SUCH INFORMATION TO BE OMITTED TO ALLOW

18  THE PLAINTIFF TO ARGUE THAT THERE IS NO EFFECT THAT THAT

19  BEHAVIOR WOULD HAVE ON THE RELATIONSHIP EXISTING BETWEEN THE

20  DECEDENT AND THE PARENTS HAD THE DEATH NOT OCCURRED.

21         THE COURT:  WELL I GUESS I DON'T KNOW WHAT THEY'RE

22  GOING TO SAY.  I THINK THAT WOULD BE -- IF THEY SAY THAT, YOU

23  HAVE GOT TO COUNTER.  I DON'T EXPECT WE'D HEAR THAT.  BUT I

24  DON'T KNOW HOW TO MICROMANAGE THAT.  I THINK WE'RE ON THE SAME

25  PAGE ON THE BAD ACTS DEAL.

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 32 of 45

1    CERTAINLY WHAT HE DID THAT DAY OR EARLIER THAT DAY

2  LEADING UP TO THE INCIDENT IS OKAY.  IF THERE'S SOME

3  MISDEMEANOR CONVICTION IN THE BACKGROUND WHICH I DON'T KNOW

4  ABOUT, THAT SHOULD NOT BE COMING IN.  IF HE TESTIFIES AND

5  THERE'S SOME FELONY CONVICTION THAT COMES IN ON CREDIBILITY,

6  THAT'S A DIFFERENT ISSUE.

7    I THINK WE'RE ALL ON BOARD THERE GENERALLY WHAT WOULD BE

8  APPROPRIATE AND WHAT WOULDN'T BE APPROPRIATE.  SO WHAT ABOUT?

9  IS THERE SOME FELONY CONVICTION?

10    MR. SANCHEZ:  NOT TO MY KNOWLEDGE, YOUR HONOR.

11  THAT'S WHY WE WERE CLEAR IN OUR OPPOSITION TO MAKE SURE THAT

12  BAD ACTS DID NOT INCLUDE THE DAY IN QUESTION.

13    THE COURT:  ALL RIGHT.  SO I THINK WE'RE OKAY ON

14  THERE.  ANYTHING ELSE ON THOSE TWO MOTIONS?

15    MR. HICKS:  NOT FROM THE PLAINTIFF, YOUR HONOR.

16    THE COURT:  DEFENDANTS MOTIONS?  THIS WOULD BE EASY

17  BECAUSE THERE WASN'T ANY OPPOSITION FILED, RIGHT?

18    MR. SANCHEZ:  CORRECT, YOUR HONOR.

19    THE COURT:  DEFENSE FIRST MOTION WAS TO EXCLUDE

20  GOLDEN RULE ARGUMENTS.  THE TENTATIVE WOULD BE TO GRANT THAT.

21  I THINK WE KNOW GENERALLY THOSE ARE NOT PERMISSIBLE.  I GUESS

22  THERE'S A BUNCH OF DIFFERENT WAYS TO KIND OF GET INTO THAT.

23  BUT GENERALLY, I THINK MOST OF THE TIME, WE'LL RECOGNIZE IT,

24  AND IT'S IMPROPER.

25    MR. HICKS:  MAY I INQUIRE AS TO ONE QUESTION

1    REGARDING THE GOLDEN RULE?

2            THE COURT:  SURE.

3            MR. HICKS:  OBVIOUSLY I UNDERSTAND THE GOLDEN RULE

4    AND NOT PLACING THE JURY IN THE SHOES OF THE DECEDENT'S

5    FAMILY.  THERE WAS A QUESTION SPECIFICALLY BY MR. DOUGLAS IN

6    THE DEPOSITION ABOUT WHETHER HUMAN LIFE IS -- LET ME, IF I CAN

7    --

8            THE COURT:  SACRED.

9            MR. HICKS:  SACRED.  AND IF THE QUESTION IS BASED ON

10   THEIR TRAINING, THAT YOU CAN ONLY USE DEADLY FORCE IN A

11   SITUATION WHERE EITHER YOURSELF OR ANOTHER PERSON IS FACED

12   WITH DEADLY FORCE AND IT'S IN THE IMMEDIATE DEFENSE OF LIFE,

13   THE REASON BEHIND THAT IS BECAUSE DEPARTMENT'S VALUE HUMAN

14   LIFE AS SACRED.  I DON'T THINK THAT VIOLATES THE GOLDEN RULE

15   BECAUSE IT'S BASED ON THEIR TRAINING.

16           THE COURT:  I'M NOT SO SURE THAT'S THE GOLDEN RULE

17   ARGUMENT.  I CAN SEE LOTS OF OTHER PROBLEMS WITH THAT

18   ARGUMENT.  MR. SANCHEZ, I DID SEE THAT IN THE BRIEF.  DO YOU

19   SEE THAT AS SOME KIND OF A GOLDEN RULE?

20           MR. SANCHEZ:  THE GOLDEN RULE IS THE FOUNDATION THAT

21   BRINGS TO THE COURT'S ATTENTION THIS REPTILIAN APPROACH TO

22   MAKING PRESENTATIONS TO JURIES NOWADAYS.  YOU ASK A QUESTION

23   THAT CAN ONLY BE ANSWERED IN ONE WAY SO AS TO MAKE IT

24   IRREFUTABLE AND THEN YOU SAY YOU DID SOMETHING THAT IS

25   CONTRARY TO THAT GENERAL CONCEPT OF SACREDNESS, MORALITY,

1  THINGS OF THAT SORT.  THAT WHOLE PROCESS OF INTRODUCING

2  QUESTIONS REGARDING MORALITY AND THE LIKE IS TO COMMUNICATE TO

3  THE JURY THAT THEY THEMSELVES HAVE AN OBLIGATION TO AFFIRM

4  THESE MORAL KIND OF PRECEPTS THAT THEY THEMSELVES COULD BE

5  SUBJECT TO HARM IF THEY DON'T AGREE WITH THE PRECEPTS AND

6  THAT'S THE BASIS OF THIS REPTILIAN KIND OF ARGUMENT PROCESS

7  THAT'S BECOME VERY POPULAR AND APPARENTLY IS BEING USED

8  SOMETIMES IN COURTS WHERE DEFENSE COUNSEL DOESN'T BRING TO THE

9  COURT'S ATTENTION THAT THIS IS AN IMPROPER METHODOLOGY TO BE

10  USED IN A COURT OF LAW AND IT TAKES AWAY THE JURY'S AUTHORITY

11  TO MAKE A DECISION ABOUT THE PROPRIETY OF THE CONDUCT BASED ON

12  A RULE OF LAW IN AN OBJECTIVE AND DISPASSIONATE KIND OF

13  METHOD.

14          THE COURT:  WELL I THINK THAT'S TRUE.  AND YOU KNOW,

15  THE TERM SACRED TO ME AND TO A LOT OF PEOPLE GETS INTO

16  RELIGION AND THEOLOGY.  THAT HAS GOT NO PART IN THIS, RIGHT?

17          MR. HICKS:  THAT SPECIFIC WORD, I UNDERSTAND, YOUR

18  HONOR.  IN THE TRAINING, FOR EXAMPLE, I JUST KNOW LA COUNTY

19  SHERIFF'S TRAINING, IT SAYS "REVERENCE FOR HUMAN LIFE".  WE

20  WILL OFTEN IN CROSS-EXAMINING AN OFFICER ABOUT USING DEADLY

21  FORCE AS LIKE A LAST RESORT AS OPPOSED TO A FIRST RESORT.

22  THE RATIONALE IS BECAUSE YOU ARE TRAINED, HUMAN LIFE NEEDS TO

23  BE PRESERVED UNLESS IT'S THE LAST OPTION.  THAT IS BASED ON

24  THEIR TRAINING.  THAT'S NOT A REPTILIAN ARGUMENT TO TRY

25  TO PULL ON THE MORAL STRINGS OF THE JURY.  THAT'S JUST TO

Case 3:13-cv-01166-MMA-RBB   Document 74   Filed 05/22/15   Page 35 of 45

1    EXPLAIN WHY OFFICERS HAVE TO CONSIDER OTHER FORMS OF FORCE

2    BEFORE USING DEADLY FORCE.

3           THE COURT:  WELL THESE STANDARD ARE IN WRITING

4    SOMEWHERE AND THEY'RE TRAINED AND CERTAINLY THE OFFICERS

5    TRAINING, POST STANDARD, OTHER STANDARDS PROBABLY WILL COME IN

6    THROUGH THE EXPERTS OR OTHERWISE, SO IF IT SAYS IT IN SOME

7    STANDARD AND THE OFFICER IS GOING TO BE ASKED ABOUT HIS

8    TRAINING, THAT'S OKAY.  BUT I'M CONFIDENT THE WORD "SACRED"

9    DOESN'T APPEAR ANYWHERE IN THERE SO ANYTHING LIKE THAT, I

10   THINK CROSSES OVER TO GETTING INTO SOME SORT OF EMOTIONAL OR

11   RELIGIOUS APPEAL THAT I THINK IS BEYOND THE BOUNDS HERE.

12          MR. HICKS:  UNDERSTOOD, YOUR HONOR.

13          THE COURT:  THE SECOND ONE WAS TO PRECLUDE PLAINTIFFS

14   POLICE PRACTICES, THE EXPERT WILL TESTIFY REGARDING

15   MR. WHITE'S PSYCHOLOGICAL CONDITION.  I UNDERSTAND THE REASON

16   FOR THAT MOTION.  BUT THE TENTATIVE WOULD BE TO DENY IT

17   GENERALLY.  BECAUSE I THINK THE POLICE PRACTICES EXPERT IS

18   GOING TO NECESSARILY HAVE TO TALK ABOUT WHAT ONE IS SUPPOSED

19   TO DO WHEN ONE IS CONFRONTED WITH BEHAVIORS LIKE WE'RE SEEING

20   HERE THAT MAY INDICATE SOMEBODY IS SUFFERING FROM SOME

21   PSYCHOLOGICAL ISSUE.

22      WHAT WE DON'T WANT TO SEE IS SOME POLICE PRACTICES EXPERT

23   GETTING UP HERE AND DIAGNOSING SOMEBODY AND GETTING INTO

24   THE D.S.M. AND TELLING YOU WHAT'S WRONG WITH THEM AND MAKING

25   SOME MEDICAL OR PSYCHIATRIC DIAGNOSIS.  I THINK THAT WOULD BE

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 36 of 45

1   CLEARLY IMPROPER SO TO THAT EXTENT, THE MOTION WOULD BE

2   GRANTED.  BUT I DON'T THINK THE EXPERT WOULD GO NEAR THAT BUT I

3   THINK THE EXPERT IS GOING TO HAVE TO TALK ABOUT WHAT OFFICERS

4   ARE TRAINED TO DO WHEN THEY CONFRONT PEOPLE DISPLAYING WHAT A

5   LAYMAN MIGHT PERCEIVE TO BE SOME PSYCHOLOGICAL ISSUE.

6          SO THE TENTATIVE IS TO DENY THE MOTION TO THAT EXTENT.

7   YOU ARE STANDING UP THERE SO WHAT DO YOU THINK FROM

8   THE PLAINTIFF'S STANDPOINT?

9          MR. HICKS:  I AGREE, YOUR HONOR, WE'RE NOT GOING TO

10  HAVE OUR POLICE PRACTICES EXPERT TRY TO DIAGNOSE OR GIVE ANY

11  TESTIMONY THAT WOULD BE OUTSIDE OF THE SCOPE.  HIS TESTIMONY

12  WILL BE FOCUSED ON WHAT TO DO WHEN YOU ENCOUNTER SOMEONE THAT

13  YOU BELIEVE TO BE SUFFERING FROM A MENTAL ILLNESS OR THAT YOU

14  BELIEVE TO BE UNDER THE INFLUENCE OF ALCOHOL OR ACTING

15  ERRATICALLY.  HE'LL TALK ABOUT HOW OFFICERS ARE TRAINED.

16         THE COURT:  ANOTHER -- I DON'T KNOW IF IT'S

17  NECESSARILY WITHIN THE PURVIEW OF THIS MOTION BUT SOMETIMES

18  POLICE PRACTICES EXPERTS WANT TO GO FURTHER AND CONVEY THE

19  PROBLEM TO THE JURY AND TELL US WHO IS GUILTY AND WHO IS NOT

20  GUILTY AND WHO SHOULD WIN THE CASE AND SO I HOPE WE ARE GOING

21  TO AVOID THAT PART, RIGHT?

22         MR. HICKS:  WE WILL AVOID THAT, YOUR HONOR.

23         THE COURT:  ALL RIGHT.  MR. SANCHEZ, WHAT ABOUT THAT?

24  NOT EVERYTHING YOU WANTED OUT OF THAT MOTION.

25         MR. SANCHEZ:  YES, YOUR HONOR.  AND I HAD APPRECIATE

Case 3:13-cv-01166-MMA-RBB   Document 74   Filed 05/22/15   Page 37 of 45

1    THE RULING.  THE CONCERN THAT WE HAVE IS THAT I HAD JACK SMITH

2    SEVERAL TIMES IN TRIALS.  SO I REASONABLY ANTICIPATE THAT HE'S

3    GOING TO OPINE THAT THIS MAN HAD A MENTAL DISORDER.  HE'S NOT

4    QUALIFIED TO SAY THAT.

5         THE COURT:  I AGREE.  LET ME STOP YOU RIGHT THERE.

6    YOU AGREE WITH THAT, RIGHT?

7         MR. HICKS:  I AGREE THAT HE DOES NOT HAVE

8    THE FOUNDATION TO DIAGNOSE MR. WHITE.

9         THE COURT:  ALL RIGHT.  AND HE SHOULDN'T SAY THAT AND

10   IF HE SAYS IT, THERE'S AN OBJECTION, IT'S GOING TO BE

11   SUSTAINED.  AT SOME POINT THE JURY IS GOING TO BE -- HE'S

12   GOING TO BE ADMONISHED AND THE JURY IS GOING TO BE CAUTIONED

13   THAT'S NOT WHY THE POLICE PRACTICES EXPERT IS HERE.

14    I INTERRUPT YOU, MR. SANCHEZ, THAT WAS A GOOD EXAMPLE.

15   YOU WERE SAYING?

16        MR. SANCHEZ:  THAT WOULD BE WHAT AREA I WOULD EXPECT

17   MR. SMITH TO START TO APPROACH.  THAT THE OFFICERS SHOULD HAVE

18   KNOWN THAT THEY WERE DEALING WITH A PERSON WHO IS MENTALLY ILL

19   OR MENTALLY UNSTABLE BECAUSE OF THE BEHAVIORS.  BUT TO DO THAT

20   CONNECTION, ONE HAS TO BE ABLE TO HAVE FOUNDATIONAL

21   INFORMATION THAT WOULD INDICATE THAT THE BEHAVIOR WAS

22   INDICATIVE OF MENTAL ILLNESS AS OPPOSED TO JUST PLAIN OUT

23   VIOLENCE.  WHICH IS WHAT THE DEPUTIES HAD TESTIFIED TO.  THEY

24   HAVE SEEN PEOPLE THAT ARE SIMPLY VIOLENT.  MAYBE YOU AND I AND

25   COUNSEL, IN THE CALM OF THE COURTROOM, MIGHT THINK OF A

1   VIOLENT BEHAVIOR AS REPRESENTING SOMETHING ELSE OTHER THAN

2   VIOLENT BEHAVIOR, BUT THAT'S WHAT IT IS.  MR. SMITH IS GOING

3   TO SAY WELL, "THAT VIOLENT BEHAVIOR ON HIS PART AND HIS

4   REFUSAL TO YIELD TO THE OFFICERS COMMANDS THAT HE SURRENDER

5   AND DROP HIS WEAPON ARE INDICATIVE OF MENTAL ILLNESS AND THEY

6   SHOULD HAVE TAKEN A DIFFERENT APPROACH.  THAT THEY SHOULD HAVE

7   DONE THIS AND THAT.  I DON'T THINK MR. SMITH IS QUALIFIED TO

8   ADDRESS THAT.  THAT'S ONE OF OUR PRINCIPLE CONCERNS WITH

9   HAVING DEALT WITH MR. SMITH AND THE NATURE OF THE TESTIMONY

10  THAT WE WOULD REASONABLY ANTICIPATE HE'S GOING TO TRY TO

11  PROFFER.

12          THE COURT:  WHAT ABOUT THAT?  YOU EXPECT THAT KIND OF

13  TESTIMONY FROM MR. SMITH?

14          MR. HICKS:  AGAIN, YOUR HONOR, HE HAS THE FOUNDATION

15  TO SAY THAT OFFICERS ARE TRAINED WHEN THEY COME ON THE SCENE

16  TO NOTICE SYMPTOMS OR RECOGNIZE FACTS THAT WOULD SUGGEST A

17  PERSON COULD BE SUFFERING FROM A MENTAL ILLNESS AND BASED ON

18  THEIR TRAINING, THERE ARE CERTAIN THINGS THEY SHOULD DO,

19  CERTAIN THINGS THEY SHOULD NOT DO.  THAT'S ALL HE WOULD

20  TESTIFY TO.  NOT DIAGNOSING ANYONE.

21          THE COURT:  I THINK THAT IS THE APPROPRIATE LIMITS

22  THAT SHOULD BE PLACED ON HIS TESTIMONY AND HE SHOULD NOT GET

23  INTO CONFIRMING THAT YES, IN MY OPINION, THIS PERSON DID HAVE

24  SOME MENTAL DISEASE OR DISABILITY OR MENTAL DIAGNOSIS SO I

25  THINK WE'RE OKAY THERE.

1    THE THIRD MOTION WAS TO PRECLUDE PLAINTIFF'S POLICE

2  PRACTICES EXPERT FROM OPINING THAT ALTERNATIVE PRACTICES SHOULD

3  HAVE BEEN USED DUE TO MR. WHITE'S MENTAL CONDITION.  I THINK

4  THAT'S PART AND PARCEL WHAT WE JUST TALKED ABOUT.

5  THE TENTATIVE WOULD BE TO GENERALLY DENY THAT FOR THE SAME

6  REASONS WE JUST DISCUSSED.  IT SEEMED TO ME THAT THE  POLICE

7  PRACTICES EXPERT, THAT'S WHY THEY'RE RETAINED AS POLICE

8  PRACTICES EXPERTS TO TELL US WHAT POLICE OFFICERS ARE SUPPOSED

9  TO DO UNDER DIFFERENT CIRCUMSTANCES AND ONE CIRCUMSTANCE WOULD

10  BE IF YOU ARE CONFRONTED WITH SOME BEHAVIOR, YOU KNOW, LIKE

11  THIS.  WHAT THEY SHOULD HAVE DONE.  SO IT SEEMS TO ME THAT THAT

12  MOTION NEEDS TO BE DENIED FOR THOSE REASONS.

13    MR. SANCHEZ, ANYTHING ELSE TO ADD ON THAT?

14    MR. SANCHEZ:  YES, YOUR HONOR, AFTER RECEIVING

15  THE COURT'S TENTATIVE DENYING THAT PARTICULAR MOTION, THE

16  COURT CITED TO GLEN VERSUS WASHINGTON COUNTY AND BRIAN VERSUS

17  MCPHERSON.  IN BOTH OF THOSE CASES, THE POLICE WERE RESPONDING

18  TO A CALL REGARDING AN INDIVIDUAL WHO HAD MENTAL ILLNESS AND

19  WAS SUICIDAL.  AND WHO IN TERMS OF THE SUBJECT, SUBJECT TO

20  CUSTODIAL EFFORTS, THE SUBJECT WASN'T VIOLENT AND HAD NOT

21  ENGAGED IN ANY VIOLENCE AND HAD NOT THREATENED ANYBODY WITH

22  ANY VIOLENCE.  SO WITH RESPECT TO THE COURT'S RULING ON OUR

23  MOTION FOR TO EXCLUDE THAT TESTIMONY BY MR. SMITH, I THINK

24  THAT THE AUTHORITY THE COURT RELIES ON IS DRAMATICALLY

25  DIFFERENT THAN THE CIRCUMSTANCES WE WERE PRESENTED WITH IN

1   THIS PARTICULAR CASE AND FOR THOSE REASONS, YOUR HONOR, WE

2   FEEL THAT THE ALTERNATIVE TACTICS KIND OF APPROACH WHEN

3   ANALYZING THIS SITUATION HAS NO BEARING IN THIS PARTICULAR

4   CASE, BASED ON THOSE PARTICULAR CASES.

5       ADMITTEDLY, WE BEING THE COURTS, HAVE HAD DECISIONS

6   ISSUED WHERE THEY HAVE INDICATED THAT A MORE TEMPERED POLICE

7   RESPONSE SHOULD BE CONSIDERED BY RESPONDING OFFICERS WHEN

8   THEY RESPONDING TO AN INDIVIDUAL WITH A KNOWN MENTAL ILLNESS.

9   HERE THIS WAS NOT A SUICIDE CALL.  THIS WAS NOT A WELFARE CALL.

10  THIS WAS AN ASSAULT WITH A DEADLY WEAPON EVENT INVOLVING A

11  PERSON OF VIOLENCE THAT THEY WERE RESPONDING TO, SO

12  THE ALTERNATIVE TACTICS KIND OF APPROACH IS AN ANALYSIS THAT WE

13  DON'T BELIEVE IS APPROPRIATE BOTH UNDER SCOTT V. HENDRICKS AND

14  BILLINGTON WHICH ARE CASES THAT INVOLVE SITUATIONS WHERE YOU

15  HAVE THREAT TO LIFE AND LIMB UNASSOCIATED WITH A CALL FOR A

16  RESPONSE ON BEHALF OF AN INDIVIDUAL WHO MAY BE ILL.

17      THE COURT:  ALL RIGHT.  I THINK THE BOTTOM LINE IS

18  THAT'S GOING TO BE AN ISSUE FOR THE JURY.  PERHAPS THE BIG

19  ISSUE HERE IS HOW THE JURY CHARACTERIZES HIS CONDUCT AND

20  BEHAVIOR AND HOW THEY FEEL IT SHOULD HAVE BEEN RESPONDED TO.

21  THAT'S WHAT THE EXPERTS ARE GOING TO BE TALKING ABOUT.  YOUR

22  EXPERT, I WOULD ASSUME WOULD HAVE A DIFFERENT APPROACH.  I

23  THINK THE JURY WILL GET BOTH SIDES.  I THINK WE CAN'T TELL

24  THE JURY UP FRONT HE WAS OR WAS NOT MENTALLY ILL.  THE JURY IS

25  GOING TO HEAR WHAT HAPPENED FROM DIFFERENT PERSPECTIVES, WHAT

1   THE CONDUCT WAS AND THE POLICE PRACTICES EXPERTS ARE GOING TO

2   TELL US WHAT THE RULES ARE WHEN CONFRONTED WITH BEHAVIOR LIKE

3   THAT AND I DON'T THINK WE CAN CABIN OR RESTRICT PLAINTIFF'S

4   POLICE PRACTICES EXPERT THAT MUCH.  HE'S PRESUMABLY NOT GOING

5   TO TELL THE JURY THAT MR. WHITE HAD A MENTAL ILLNESS, BUT HE

6   IS GOING TO SAY ESSENTIALLY, WHEN CONFRONTED WITH THIS TYPE OF

7   BEHAVIOR, THERE ARE DIFFERENT INFERENCES THAT CAN BE DRAWN AND

8   THERE ARE DIFFERENT PRACTICES THAT CAN BE PURSUED.  I GUESS

9   THAT'S KIND OF WHAT HE'S GOING TO SAY?

10          MR. SANCHEZ:  WELL, YOUR HONOR, HAVING TAKEN HIS

11  DEPOSITION, HIS TESTIMONY WAS THEY SHOULD HAVE TRIED A DOG AND

12  IF THAT DIDN'T WORK AND THE DOG GOT KILLED, SO WHAT AND THEY

13  SHOULD HAVE SHOT HIM WITH A TASER AND IF THAT DIDN'T WORK, SO

14  WHAT.  I THINK HE EVEN SUGGESTED THEY SHOULD HAVE TACKLED

15  THE GUY AND PUT THEIR OWN LIVES AT RISK IN ORDER TO TRY AND

16  CONTROL HIM AND THEN ONLY AFTER ALL THOSE THINGS, THEN IT

17  WOULD HAVE BEEN OKAY TO SHOOT HIM.  THAT'S NOT THE

18  ANALYSIS UNDER THE OBJECTIVE REASONABLENESS STANDARD AND IT IS

19  CERTAINLY NOT THE METHOD THAT ANY POLICE AGENCY IS TEACHING

20  THEIR OFFICERS, THERE'S A LADDER STEP THAT YOU HAVE TO GET TO

21  OR GO THROUGH BEFORE UTILIZING THE LETHAL FORCE IN RESPONSE

22  TO A THREAT TO LIFE AND LIMB.

23          THE COURT:  I UNDERSTAND.  YOU DISAGREE WITH THIS

24  OPINION AND YOU HAVE AN EXPERT THAT, YOU KNOW, SO THAT'S -- I

25  APPRECIATE THAT YOU HAVE A DIFFERENT VIEW AND YOUR EXPERT HAS

1   A DIFFERENT VIEW BUT THAT'S WHAT THE JURY IS GOING TO BE

2   CALLED UPON TO SORT OUT.

3        ALL RIGHT.  SO THE FOURTH MOTION WAS TO EXCLUDE INQUIRY

4   INTO DEPUTY ASTORGA'S LITIGATION INTERNAL AFFAIRS HISTORY.  I

5   GUESS I DON'T KNOW, THE TENTATIVE WAS TO DEFER ON THAT.

6   THE INITIAL THOUGHT WAS TO GRANT THE MOTION BASED UPON SOME

7   OFFER OF PROOF.  I DON'T KNOW WHAT WE'RE TALKING ABOUT.  IS

8   THERE SOMETHING THERE YOU ARE WORRIED ABOUT OR WHAT?

9        MR. HICKS:  YOUR HONOR, WE DO NOT HAVE AN OFFER OF

10  PROOF REGARDING HIS HISTORY OR INTERNAL AFFAIRS INVESTIGATION

11  SO WE WILL NOT SEEK TO GET INTO ANY INFORMATION.

12       THE COURT:  SO THAT'S MOOT THEN?  IT SEEMS TO ME JUST

13  GENERALLY SPEAKING THAT IT REALLY WOULDN'T BE RELEVANT EVEN IF

14  THERE WAS SOMETHING THERE BECAUSE WE'RE TALKING ABOUT AN

15  OBJECTIVE STANDARD HERE, RIGHT?  WHETHER THE FORCE HERE WAS

16  APPROPRIATE OR NOT, WHAT HE INTENDED OR WHAT HE DID BEFORE.

17       MR. SANCHEZ:  YES, YOUR HONOR.  AND RATHER THAN

18  CHARACTERIZING THE MOTION AS MOOT, WE'D LIKE IT TO BE GRANTED.

19  I THINK THAT'S A NON OPPOSITION STATEMENT.

20       THE COURT:  THE TENTATIVE WAS TO GRANT THE MOTION

21  ABSENT SOME OFFER OF PROOF OR SOMETHING TO THE CONTRARY.  IT

22  SHOULD BE GRANTED AND IF SOMETHING COMES UP, WE CAN REVISIT IT

23  BASED UPON THIS RECORD, IT SHOULD BE GRANTED.

24       MR. HICKS:  THANK YOU, YOUR HONOR.

25       THE COURT:  THAT WAS IT FOR MY LIST OF WRITTEN

 1    MOTIONS IN LIMINE.  ANY OTHER MOTIONS IN LIMINE, WRITTEN OR

 2    OTHERWISE WE SHOULD TALK ABOUT TODAY?

 3              MR. HICKS:  NOT AT THIS TIME FROM THE PLAINTIFF, YOUR

 4    HONOR.

 5              MR. SANCHEZ:  NOTHING, YOUR HONOR.

 6              THE COURT:  KIRSTEN, ANYTHING ELSE WE NEED TO CHAT

 7    ABOUT?

 8              KIRSTEN:  NO, YOUR HONOR.  PATRICIA HAS COPIES OF

 9    ANOTHER PRE-TRIAL FILING ORDER TO GIVE TO THE PARTIES.

10              THE COURT:  OKAY.  GREAT.  ALL RIGHT.  YOU ARE ABOUT

11    TO BE HANDED OUR AMENDED PRE-TRIAL FILING ORDER.  I THINK THAT

12    WILL TAKE CARE OF IT.  ANYTHING ELSE?

13                 (COURT AND CLERK TALK OFF THE RECORD)

14              THE COURT:  GOOD POINT.  IN TERMS OF THE TOTAL PANEL,

15    LEG'S BRING IN 24 JURORS IN TOTAL SINCE I'M GIVING YOU A

16    COUPLE EXTRA PEREMPTORIES, BECAUSE WE MIGHT LOSE A FEW GIVEN

17    THE NATURE OF THE CASE SO WE WILL BRING IN 24 AND YOU'LL EACH

18    HAVE FOUR PEREMPTORIES AND WE WILL END UP WITH A PANEL OF

19    EIGHT.  IS THAT OKAY WITH EVERYONE?

20              MR. SANCHEZ:  YES, YOUR HONOR.

21              MR. HICKS:  YES, YOUR HONOR.

22              THE COURT:  ALL RIGHT.  ANYTHING ELSE TO COVER?

23              MR. HICKS:  I JUST HAVE ONE HOUSEKEEPING QUESTION,

24    YOUR HONOR, THE TIME FOR THE COURT.  WHAT TIMES FOR THE TRIAL?

25              THE COURT:  WE START AT 6:00 AM AND GO TO MIDNIGHT.

Case 3:13-cv-01166-MMA-RBB Document 74 Filed 05/22/15 Page 44 of 45

1   OUR TRIAL HOURS ARE 9:00 TO 12:00 WITH A MID MORNING BREAK 15

2   MINUTES AROUND 10:30 AND 1:30 TO 4:30 WITH A MID AFTERNOON

3   BREAK AROUND 3:00 O'CLOCK.

4          TYPICALLY WE ONLY FOUR DAY WEEKS, HAVE WE BLOCKED OUT THE

5   CALENDAR, DO WE HAVE FULL WEEKS?

6             THE CLERK:  YES, YOUR HONOR.

7             THE COURT:  OKAY.  SO WE HAVE A FULL FIVE DAY COURT

8   WEEK SET FOR YOU FOLKS, SPECIALLY SET.  THAT'S THE NORM, IF WE

9   HAVE A WITNESS ON THE STAND THAT HAS GOT TO FLY OUT OF TOWN,

10  IT'S GOING TAKE UNTIL 20 TO 5:00 OR SOMETHING, WITH

11  THE PERMISSION OF THE JURY, WE CAN GO A LITTLE LATE.  BUT

12  THOSE ARE THE NORMAL HOURS.

13            MR. HICKS:  THANK YOU.

14            THE COURT:  WILL YOU BE TRAVELING, IS THAT THE ISSUE

15  BACK AND FORTH OR?

16            MR. HICKS:  I THINK WE'RE BOTH GOING TO BE STAYING

17  BUT THERE'S A POSSIBILITY ONE OF US MAY HAVE TO TRAVEL.

18            THE COURT:  MR. SANCHEZ WILL BE TAKING YOU OUT

19  TO DINNER EACH TIME.

20            MR. HICKS:  AND WE'RE GOING TO STAY AT HIS HOUSE TOO.

21            MR. SANCHEZ:  I DO HAVE ONE THING, YOUR HONOR, AS A

22  MATTER OF COURTESY, AS WE PROCEED THROUGH THE TRIAL, WE ASK

23  THAT COUNSEL EXCHANGE THE NAMES OF WITNESSES THAT THEY

24  ANTICIPATE THE WILL BE CALLING ON THE SUCCESSIVE DATE.

25            THE COURT:  I THINK THAT MIGHT BE IN OUR STANDARD

1   PROTOCOL THERE BUT WE ASK THAT IN CIVIL CASES, THAT

2   COUNSEL NOTIFY AT LEAST 24 HOURS IN ADVANCE OF NOT ONLY

3   IDENTITY BUT THE ORDER OF THE WITNESSES BEING CALLED SO WE

4   NEVER GET TO THE POINT, GEE, I WASN'T READY TO CROSS-EXAMINE

5   THAT PERSON.  SO WE ALL KNOW IN ADVANCE AND YOU KNOW, IF THERE

6   IS AN ISSUE, WE UNDERSTAND, THINGS HAPPEN AND PEOPLE DON'T

7   SHOW UP WE CAN MODIFY IT ACCORDINGLY.  I'M HAPPY TO TAKE

8   PEOPLE OUT OF ORDER.  IF YOU HAVE GOT AN EXPERT THAT YOU ARE

9   PAYING AND THIS IS THE ONLY DAY HE IS HERE, WE CAN INTERRUPT

10   SOMEBODY AND TAKE THE EXPERT SO WE WILL WORK WITH YOU ON THE

11   WITNESSES.  OKAY?

12         MR. HICKS:  ABSOLUTELY, YOUR HONOR.

13         THE COURT:  ALL RIGHT.  THANKS.  HAVE A GOOD DAY

14   EVERYONE.

15         MR. HICKS:  YOU TOO.

16

17                 C-E-R-T-I-F-I-C-A-T-E

18     I, ELIZABETH M. CESENA, CSR 12266, AN OFFICIAL
REPORTER OF THE UNITED STATES DISTRICT COURT DO HEREBY CERTIFY

19   THAT I REPORTED THE PROCEEDINGS TO THE BEST OF MY ABILITY AND
THAT THE FOREGOING TRANSCRIPT IS A FULL, TRUE AND CORRECT

20   TRANSCRIPT OF PROCEEDINGS HELD ON MAY 18, 2015
    SAN DIEGO, CALIFORNIA, DATED MAY 21, 2015.

21

22              /S/ ELIZABETH CESENA

23

24

25