# EXHIBIT A

1  **CARL E. DOUGLAS, Esq., State Bar No. 097011**
   *DOUGLAS / HICKS LAW*
2  **A Professional Corporation**
   8484 Wilshire Boulevard, Suite 548
3  Beverly Hills, California 90211
   (323) 655-6505   Fax: (323) 651-4990
4  carl@thedouglasfirm.com

5  **Drew R. Antablin, Esq., State Bar No. 75710**
   **Andrea D. Bruce, Esq., State Bar No. 256561**
6  **ANTABLIN & BRUCE,  Law Partnership**
   8484 Wilshire Boulevard, Suite 548
7  Beverly Hills, California 90211
   (323)651-4490  Fax: (323) 651-4990
8  antablin@sbcglobal.net

9  Attorney for Plaintiffs **ELWOOD TIMOTHY WHITE** , Individually
   and as Successor-in-Interest to the **ESTATE OF ELWOOD EDWARDS**
10 **WHITE, AND DARLEEN EDWARDS WHITE**

11

12              **UNITED STATES DISTRICT COURT**

13            **SOUTHERN DISTRICT OF CALIFORNIA**

14

15 ELWOOD TIMOTHY WHITE ,            ) CASE NO. 13-CV-1166-MMA(RBB)
   Individually, and as Successor-in-Interest )
16 to the Estate of Elwood Edwards White, ) **PLAINTIFF DARLEEN EDWARDS**
   and DARLEEN EDWARDS WHITE  ) **WHITE'S RESPONSE TO**
                              ) **INTERROGATORIES**
17                            ) **PROPOUNDED BY THE COUNTY**
            *Plaintiffs,*      ) **OF SAN DIEGO, SET ONE**
18                            )
       v.                     )
19                            )
   COUNTY OF SAN DIEGO, MICHAEL )
20 ASTORGA; CITY OF OCEANSIDE  )
   and 20 Unknown Other Named   )
21 Defendants,                 )
                              )
22                            )
            *Defendants.*      )
23 _____

24 **RESPONDING PARTY:      DARLEEN EDWARDS WHITE**
25
   **PROPOUNDING PARTY:    COUNTY OF SAN DIEGO**
26
   **SET NO.:              ONE**
27

28                          - 1 -

      _____
         DARLEEN EDWARDS WHITE'S RESPONSE TO INTERROGATORIES
              PROPOUNDED BY COUNTY OF SAN DIEGO

                                              EXHIBIT A

**INTERROGATORY NO. 1**:

State all facts which support your allegation that Deputy Michael Astorga used excessive force against decedent Elwood E. White, also known as Elwood Edwards.

**RESPONSE TO INTERROGATORY NO. 1**:

Plaintiffs' investigation and discovery in this action has just commenced. Plaintiffs have not yet been able to take the deposition of Deputy Astorga, or any other persons present at or about the time of the killing of Elwood Edwards White ("Elwood"). Plaintiff therefore reserves the right to supplement this answer at a later time, after additional discovery is completed, and which discovery Plaintiff contemplates will reveal additional facts which would bear on this interrogatory answer. Based upon Plaintiffs' limited investigation and discovery to date, Plaintiff responds as follows:

On May 20, 2012, at approximately 1:30 p.m., Elwood was shot and killed by Deputy Astorga.

Elwood was not in possession of a gun, or any other weapon which posed any reasonable threat of death or serious bodily injury to Deputy Astorga.

Elwood was 22 years old. Prior to May 20, 2012, when he was shot and killed by Deputy Astorga, Elwood never had any serious run-ins with law enforcement. He attended church regularly. He was a loving son to his parents.

There were approximately 5 other law enforcement officers present at the same time and location, and in the immediate vicinity of where Deputy Astorga and Elwood were located. None of those officers shot Elwood. None of those officers killed Elwood. By their actions, or inaction, seemingly none of those officers reasonably believed that Elwood posed a deadly threat to themselves, to Deputy Astorga, or to any other person present at the scene of Elwood's killing by Deputy Astorga.

- 2 -

1    One or more witnesses has stated that as deputies/officers formed an arc

2  around Elwood prior to Deputy Astorga killing him, that Elwood screamed, threw

3  his hands in the air, and said, "Somebody help me."   Deputy Astorga chose not to

4  try to do that, rather he chose to shoot Elwood.

5    A police dog was present at the scene.   The police dog was not used to

6  subdue Elwood so as to take him into custody.   Other non-lethal tactics/force

7  were not used to subdue Elwood.   Deputy Estorga's training and County policy

8  required him to use less than lethal force before shooting and killing Elwood, yet

9  he did not do so.   A taser, or other less than lethal use of force, could and should

10  have been deployed.   More than one - several - witnesses at the scene have stated

11  that there was no reason to shoot Elwood and/or they questioned why officers shot

12  and killed Elwood and/or did not use less than lethal force.

13    The Oceanside officers who first arrived on scene had the incident under

14  control before County deputies, including Deputy Estorga, arrived on scene.

15    Some time prior to being shot, Elwood had been holding a stick.   He was

16  not holding the stick when he was shot and killed.   Several witnesses confirm this.

17  Immediately prior to being shot by Deputy Estorga, according to several

18  witnesses, Elwood was for the most part standing still, not approaching Estorga or

19  otherwise presenting a significant threat to others in the immediate vicinity.

20    To the extent that Elwood was experiencing an episode of mental

21  incapacity, Deputy Astorga and other County deputies at the scene should have

22  been trained to recognize that, and to deal with Elwood in that fashion, rather than

23  as a dangerous criminal who should be shot and killed.

24    Discovery is continuing.   This answer will be supplemented after Plaintiffs

25  have been able to take depositions of officers/deputies, and other persons  who

26  were present at the scene of Elwood's killing.

27  / / /

28

- 3 -

**INTERROGATORY NO. 2**:

State all facts upon which you base your claim of negligence against Deputy Michael Astorga.

**RESPONSE TO INTERROGATORY NO. 2**:

Plaintiffs' investigation and discovery in this action has just commenced. Plaintiffs have not yet been able to take the deposition of Deputy Astorga, or any other persons present at or about the time of the killing of Elwood Edwards White ("Elwood"). Plaintiff therefore reserves the right to supplement this answer at a later time, after additional discovery is completed, and which discovery Plaintiff contemplates will reveal additional facts which would bear on this interrogatory answer. Based upon Plaintiffs' limited investigation and discovery to date, Plaintiff responds as follows:

On May 20, 2012, at approximately 1:30 p.m., Elwood was shot and killed by Deputy Astorga.

Elwood was not in possession of a gun, or any other weapon which posed any reasonable threat of death or serious bodily injury to Deputy Astorga.

Elwood was 22 years old. Prior to May 20, 2012, when he was shot and killed by Deputy Astorga, Elwood never had any serious run-ins with law enforcement. He attended church regularly. He was a loving son to his parents.

There were approximately 5 other law enforcement officers present at the same time and location, and in the immediate vicinity of where Deputy Astorga and Elwood were located. None of those officers shot Elwood. None of those officers killed Elwood. By their actions, or inaction, seemingly none of those officers reasonably believed that Elwood posed a deadly threat to themselves, to Deputy Astorga, or to any other person present at the scene of Elwood's killing by Deputy Astorga.

One or more witnesses has stated that as deputies/officers formed an arc

- 4 -

EXHIBIT A

1  around Elwood prior to Deputy Astorga killing him, that Elwood screamed, threw

2  his hands in the air, and said, "Somebody help me."   Deputy Astorga chose not to

3  try to do that, rather he chose to shoot Elwood.

4       A police dog was present at the scene.   The police dog was not used to

5  subdue Elwood so as to take him into custody.   Other non-lethal tactics/force

6  were not used to subdue Elwood.   Deputy Estorga's training and County policy

7  required him to use less than lethal force before shooting and killing Elwood, yet

8  he did not do so.   A taser, or other less than lethal use of force, could and should

9  have been deployed.   More than one - several - witnesses at the scene have stated

10 that there was no reason to shoot Elwood and/or they questioned why officers shot

11 and killed Elwood and/or did not use less than lethal force.

12      The Oceanside officers who first arrived on scene had the incident under

13 control before County deputies, including Deputy Estorga, arrived on scene.

14      Some time prior to being shot, Elwood had been holding a stick.   He was

15 not holding the stick when he was shot and killed.   Several witnesses confirm this.

16 Immediately prior to being shot by Deputy Estorga, according to several

17 witnesses, Elwood was for the most part standing still, not approaching Estorga or

18 otherwise presenting a significant threat to others in the immediate vicinity.

19      To the extent that Elwood was experiencing an episode of mental

20 incapacity, Deputy Astorga and other County deputies at the scene should have

21 been trained to recognize that, and to deal with Elwood in that fashion, rather than

22 as a dangerous criminal who should be shot and killed.

23      Discovery is continuing.   This answer will be supplemented after Plaintiffs

24 have been able to take depositions of officers/deputies, and other persons  who

25 were present at the scene of Elwood's killing.

26 **INTERROGATORY NO. 3**:

27      State all facts upon which you base your claim for violation of your right of

28                                          - 5 -

1   association against Deputy Michael Astorga.

2   **RESPONSE TO INTERROGATORY NO. 3**:

3       Plaintiffs' investigation and discovery in this action has just commenced.

4   Plaintiffs have not yet been able to take the deposition of Deputy Astorga, or any

5   other persons present at or about the time of the killing of Elwood Edwards White

6   ("Elwood").  Plaintiff therefore reserves the right to supplement this answer at a

7   later time, after additional discovery is completed, and which discovery Plaintiff

8   contemplates will reveal additional facts which would bear on this interrogatory

9   answer.   Based upon Plaintiffs' limited investigation and discovery to date,

10  Plaintiff responds as follows:

11      On May 20, 2012, at approximately 1:30 p.m., Elwood was shot and killed

12  by Deputy Astorga.

13      Elwood was not in possession of a gun, or any other weapon which posed

14  any reasonable threat of death or serious bodily injury to Deputy Astorga.

15      Elwood was 22 years old.  Prior to May 20, 2012, when he was shot and

16  killed by Deputy Astorga, Elwood never had any serious run-ins with law

17  enforcement.   He attended church regularly.  He was a loving son to his parents.

18      There were approximately 5 other law enforcement officers present at the

19  same time and location, and in the immediate vicinity of where Deputy Astorga

20  and Elwood were located.   None of those officers shot Elwood.   None of those

21  officers killed Elwood.    By their actions, or inaction, seemingly none of those

22  officers reasonably believed that Elwood posed a deadly threat to themselves, to

23  Deputy Astorga, or to any other person present at the scene of Elwood's killing by

24  Deputy Astorga.

25      One or more witnesses has stated that as deputies/officers formed an arc

26  around Elwood prior to Deputy Astorga killing him, that Elwood screamed, threw

27  his hands in the air, and said,  "Somebody help me."   Deputy Astorga chose not to

28  - 6 -

1    try to do that, rather he chose to shoot Elwood.

2         A police dog was present at the scene.   The police dog was not used to

3    subdue Elwood so as to take him into custody.   Other non-lethal tactics/force

4    were not used to subdue Elwood.   Deputy Estorga's training and County policy

5    required him to use less than lethal force before shooting and killing Elwood, yet

6    he did not do so.   A taser, or other less than lethal use of force, could and should

7    have been deployed.    More than one - several - witnesses at the scene have stated

8    that there was no reason to shoot Elwood and/or they questioned why officers shot

9    and killed Elwood and/or did not use less than lethal force.

10        The Oceanside officers who first arrived on scene had the incident under

11   control before County deputies, including Deputy Estorga, arrived on scene.

12        Some time prior to being shot, Elwood had been holding a stick.   He was

13   not holding the stick when he was shot and killed.   Several witnesses confirm this.

14   Immediately prior to being shot by Deputy Estorga, according to several

15   witnesses, Elwood was for the most part standing still, not approaching Estorga or

16   otherwise presenting a significant threat to others in the immediate vicinity.

17        To the extent that Elwood was experiencing an episode of mental

18   incapacity, Deputy Astorga and other County deputies at the scene should have

19   been trained to recognize that, and to deal with Elwood in that fashion, rather than

20   as a dangerous criminal who should be shot and killed.

21        The Plaintiffs were Elwood's parents, and as a result of his death they have

22   been deprived of their Constitutional right of association with him, and their right

23   and ability to associate with, love and be loved, care for and be cared for, socialize

24   with, and enjoy their relationship with their son.

25        Discovery is continuing.   This answer will be supplemented after Plaintiffs

26   have been able to take depositions of officers/deputies, and other persons  who

27   were present at the scene of Elwood's killing.

28
- 7 -

**INTERROGATORY NO. 4**:

State all facts upon which you base your claim that defendants failed to summon medical care for decedent Elwood E. White, also known as Elwood Edwards, after he was shot.

**RESPONSE TO INTERROGATORY NO. 4**:

Plaintiffs' investigation and discovery in this action has just commenced. Plaintiffs have not yet been able to take the deposition of Deputy Astorga, or any other persons present at or about the time of the killing of Elwood Edwards White ("Elwood"). Plaintiff therefore reserves the right to supplement this answer at a later time, after additional discovery is completed, and which discovery Plaintiff contemplates will reveal additional facts which would bear on this interrogatory answer. Based upon Plaintiffs' limited investigation and discovery to date, Plaintiff responds as follows:

On May 20, 2012, at approximately 1:30 p.m., Elwood was shot and killed by Deputy Astorga.

Elwood was not in possession of a gun, or any other weapon which posed any reasonable threat of death or serious bodily injury to Deputy Astorga.

Elwood was 22 years old. Prior to May 20, 2012, when he was shot and killed by Deputy Astorga, Elwood never had any serious run-ins with law enforcement. He attended church regularly. He was a loving son to his parents.

There were approximately 5 other law enforcement officers present at the same time and location, and in the immediate vicinity of where Deputy Astorga and Elwood were located. None of those officers shot Elwood. None of those officers killed Elwood. By their actions, or inaction, seemingly none of those officers reasonably believed that Elwood posed a deadly threat to themselves, to Deputy Astorga, or to any other person present at the scene of Elwood's killing by Deputy Astorga.

One or more witnesses has stated that as deputies/officers formed an arc

- 8 -

around Elwood prior to Deputy Astorga killing him, that Elwood screamed, threw his hands in the air, and said, "Somebody help me."  Deputy Astorga chose not to try to do that, rather he chose to shoot Elwood.

A police dog was present at the scene.  The police dog was not used to subdue Elwood so as to take him into custody.  Other non-lethal tactics/force were not used to subdue Elwood.  Deputy Estorga's training and County policy required him to use less than lethal force before shooting and killing Elwood, yet he did not do so.  A taser, or other less than lethal use of force, could and should have been deployed.  More than one - several - witnesses at the scene have stated that there was no reason to shoot Elwood and/or they questioned why officers shot and killed Elwood and/or did not use less than lethal force.

The Oceanside officers who first arrived on scene had the incident under control before County deputies, including Deputy Estorga, arrived on scene.

Some time prior to being shot, Elwood had been holding a stick.  He was not holding the stick when he was shot and killed.  Several witnesses confirm this. Immediately prior to being shot by Deputy Estorga, according to several witnesses, Elwood was for the most part standing still, not approaching Estorga or otherwise presenting a significant threat to others in the immediate vicinity.

To the extent that Elwood was experiencing an episode of mental incapacity, Deputy Astorga and other County deputies at the scene should have been trained to recognize that, and to deal with Elwood in that fashion, rather than as a dangerous criminal who should be shot and killed.   To the extent that Deputy Astorga and other County deputies at the scene may testify that the information which they were told about and/or which they observed, caused them to think that Elwood was not acting as a rational person would, they should have suspected that he was experiencing some episode involving mental illness, and should have acted accordingly, and summoned medical professionals prior to the incident and

- 9 -

immediately after the incident after having shot Elwood.   Discovery is continuing.

The Plaintiffs were Elwood's parents, and as a result of his death they have been deprived of their Constitutional right of association with him, and their right and ability to associate with, love and be loved, care for and be cared for, socialize with, and enjoy their relationship with their son.

Discovery is continuing.   This answer will be supplemented after Plaintiffs have been able to take depositions of officers/deputies, and other persons  who were present at the scene of Elwood's killing.

**INTERROGATORY NO. 5**:

State all facts upon which you base your allegation that defendants should have known that decedent Elwood E. White, also known as Elwood Edwards was mentally ill as alleged in your first amended complaint.

**RESPONSE TO INTERROGATORY NO. 5**:

Plaintiffs' investigation and discovery in this action has just commenced. Plaintiffs have not yet been able to take the deposition of Deputy Astorga, or any other persons present at or about the time of the killing of Elwood Edwards White ("Elwood").  Plaintiff therefore reserves the right to supplement this answer at a later time, after additional discovery is completed, and which discovery Plaintiff contemplates will reveal additional facts which would bear on this interrogatory answer.   Based upon Plaintiffs' limited investigation and discovery to date, Plaintiff responds as follows:

On May 20, 2012, at approximately 1:30 p.m., Elwood was shot and killed by Deputy Astorga.

Elwood was not in possession of a gun, or any other weapon which posed any reasonable threat of death or serious bodily injury to Deputy Astorga.

Elwood was 22 years old.  Prior to May 20, 2012, when he was shot and killed by Deputy Astorga, Elwood never had any serious run-ins with law

- 10 -

enforcement.   He attended church regularly.   He was a loving son to his parents.

There were approximately 5 other law enforcement officers present at the same time and location, and in the immediate vicinity of where Deputy Astorga and Elwood were located.   None of those officers shot Elwood.   None of those officers killed Elwood.    By their actions, or inaction, seemingly none of those officers reasonably believed that Elwood posed a deadly threat to themselves, to Deputy Astorga, or to any other person present at the scene of Elwood's killing by Deputy Astorga.

One or more witnesses has stated that as deputies/officers formed an arc around Elwood prior to Deputy Astorga killing him, that Elwood screamed, threw his hands in the air, and said, "Somebody help me."   Deputy Astorga chose not to try to do that, rather he chose to shoot Elwood.

A police dog was present at the scene.   The police dog was not used to subdue Elwood so as to take him into custody.   Other non-lethal tactics/force were not used to subdue Elwood.   Deputy Estorga's training and County policy required him to use less than lethal force before shooting and killing Elwood, yet he did not do so.   A taser, or other less than lethal use of force, could and should have been deployed.   More than one - several - witnesses at the scene have stated that there was no reason to shoot Elwood and/or they questioned why officers shot and killed Elwood and/or did not use less than lethal force.

The Oceanside officers who first arrived on scene had the incident under control before County deputies, including Deputy Estorga, arrived on scene.

Some time prior to being shot, Elwood had been holding a stick.   He was not holding the stick when he was shot and killed.   Several witnesses confirm this.   Immediately prior to being shot by Deputy Estorga, according to several witnesses, Elwood was for the most part standing still, not approaching Estorga or otherwise presenting a significant threat to others in the immediate vicinity.

- 11 -

To the extent that Elwood was experiencing an episode of mental incapacity, Deputy Astorga and other County deputies at the scene should have been trained to recognize that, and to deal with Elwood in that fashion, rather than as a dangerous criminal who should be shot and killed.    To the extent that Deputy Astorga and other County deputies at the scene may testify that the information which they were told about and/or which they observed, caused them to think that Elwood was not acting as a rational person would, they should have suspected that he was experiencing some episode involving mental illness, and should have acted accordingly, and summoned medical professionals prior to the incident and immediately after the incident after having shot Elwood.   Discovery is continuing.

The Plaintiffs were Elwood's parents, and as a result of his death they have been deprived of their Constitutional right of association with him, and their right and ability to associate with, love and be loved, care for and be cared for, socialize with, and enjoy their relationship with their son.

Discovery is continuing.   This answer will be supplemented after Plaintiffs have been able to take depositions of officers/deputies, and other persons  who were present at the scene of Elwood's killing.

**INTERROGATORY NO. 6**:

If decedent Elwood E. White, also known as Elwood Edwards consumed drugs, including but not limited to nicotine, alcohol, marijuana, methamphetamine, cocaine, heroin, therapeutic and prescription drugs, identify each drug and state the dates when he first began using the drug and last used the drugs.

**RESPONSE TO INTERROGATORY NO. 6**:

Decedent had a prescription for medical marijuana.  The dates Elwood first began using it and when he last used it are unknown to this responding party. Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

- 12 -

**INTERROGATORY NO. 7**:

Identify by name, address and telephone number all health care providers with whom decedent Elwood E. White, also known as Elwood Edwards treated, consulted, or visited as a result of the incident sued upon, including but no limited to any mental health, family, marriage, employee assistance, drug and alcohol counselors or therapists, psychologists, psychiatrists, nurses, physicians, hospitals, health clinics, public health agencies, drug dispensaries.

**RESPONSE TO INTERROGATORY NO. 7**:

Venice Beach Physicians, 6510 Hollywood Blvd, Los Angeles, CA 90028 (323) 871-4200.  Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

**INTERROGATORY NO. 8**:

Identify by name, address and telephone number each person who witnessed any aspect of the event wherein decedent Elwood E. White also known as Elwood Edwards was shot on May 20, 2012.

**RESPONSE TO INTERROGATORY NO. 8**:

There are no known percipient witnesses that this responding Plaintiff is aware of, other than persons who may be identified in police/incident reports prepared by the County of San Diego Sheriff's deputies (which are in the possession of Defendant) and/or the City of Oceanside's police officers (which have been produced to all parties in this action).  Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

**INTERROGATORY NO. 9**:

State the name an address of the birth parents of decedent Elwood E. White also known as Elwood Edwards.

**RESPONSE TO INTERROGATORY NO. 9**:

Darleen Edwards White and Elwood White, 23705 Vanowen St., #179,

- 13 -

West Hills, CA.

**INTERROGATORY NO. 10**:

Explain why on May 20, 2012, decedent was identified by name in a California Department of Motor Vehicles identity photo as Elwood Edwards.

**RESPONSE TO INTERROGATORY NO. 10**:

Elwood Edwards is the name listed on the decedent's New Jersey birth certificate.  Elwood White is the name listed on his Social Security card.

**INTERROGATORY NO. 11**:

Identify all children of decedent Elwood E. White also known as Elwood Edwards, if any, by name, birth place, birth date, and current address.

**RESPONSE TO INTERROGATORY NO. 11**:

None.

**INTERROGATORY NO. 12**:

Identify each residential address of decedent Elwood E. White also known as Elwood Edwards by street name, city, state, and dates of residency.

**RESPONSE TO INTERROGATORY NO. 12**:

22614 8th St., Newhall, CA 91321 - Residence at time of death

22319 Wheeler Rd., Newhall, CA 91321

Elwood lived with in various locations including at or near: Hoover Street, USC Housing, CA; Victory Blvd, West Hills, CA; Petal Ave., Las Vegas, NV; Bothwell Road, Reseada, CA; and Oneil Place, Oxnard, CA.  The exact address and dates are unknown to this responding Plaintiff.  Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

**INTERROGATORY NO. 13**:

For each residential address of decedent Elwood E. White, identify by name and current address each person who resided with him at each of said addresses.

**RESPONSE TO INTERROGATORY NO. 13**:

- 14 -

22614 8th St., Newhall, CA 91321 - Resided with sister, Saharra White-Kalyesubula and her daughter S. Kalyesubula.

22319 Wheeler Rd., Newhall, CA 91321 - Resided with Parents.

While Elwood as a minor he lived with his parents at different locations in Oxnard, CA, Reseda, CA and Las Vegas, NV.  Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

**INTERROGATORY NO. 14**:

For each school, college, university, and vocational program decedent Elwood E. White, also known as Elwood Edwards attended, identify the name and address of such school, college, university, and vocational program, dates of attendance, program of study, degree, certificate and diploma received by him.

**RESPONSE TO INTERROGATORY NO.14**:

Henry David Thoreau High School 5429 Quakertown Avenue, Woodland Hills, CA 91364, Phone: (818) 340-4395; Cleveland High School, 8140 Vanalden Ave, Los Angeles, 91335, Phone: (818) 885-2300; El Camino High School 5440 Valley Cir. Blvd., Woodland Hills, CA 91367, Phone: (818) 595-7500; Channel Islands High School 1400 Raiders Way, Oxnard, CA 93033, Phone: (805) 385-2787.  Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

**INTERROGATORY NO. 15**:

State the employment history of decedent Elwood E. White, also known as Elwood Edwards through May 20, 2012.

**RESPONSE TO INTERROGATORY NO.15** :

Augora Senior Retreat/Sandra Armstrong - In Home Caregiver (at time of death); YMCA, 625 S. New Hampshire Ave., LA CA 90005 (2011); Jerry's Famous Deli, Inc., Woodlands Hills, CA (2010-2011); Jerry's Famous Deli, Inc., Studio City, CA (2008-2009); Abercrombie & Fitch Stores, Inc./HOLLISTER

- 15 -

(2008-2009); Ralphs Grocery Store, West Hills, CA (2007).   Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

**INTERROGATORY NO. 16**:

State the annual income of decedent Elwood E. White, also known as Elwood Edwards for each year he earned income through May 20, 2012.

**RESPONSE TO INTERROGATORY NO. 16**:

2011 W-2 from YMCA - $4079.94;

2009 W-2 from Jerry's Famous Deli, Inc. - $3363.75;

2009 W-2 from Abercrombie & Fitch Stores, Inc. - $173.00;

2008 W-2 from Jerry's Famous Deli, Inc. - $353.25;

2008 W-2 from Abercrombie & Fitch Stores, Inc. - $2914.01;

2007 W-2 from Ralphs Grocery Company - $3202.88.

The above constitutes the extent of the information presently known to Plaintiff. Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

**INTERROGATORY NO. 17**:

List all of decedent Elwood E. White, also known as Elwoods Edwards' assets as of May 20, 2012, including but not limited to all realty, financial accounts by account type, number, and financial institution name and address; all trusts by name, federal identification tax number, and corpus in which he was a beneficiary; medical, dental, vision, life insurance, accidental death and dismemberment insurance, deferred compensation account balance, retirement account balance, flexible spending account balance, and stock account balance, by name of companies, source, addresses and policy numbers.

**RESPONSE TO INTERROGATORY NO. 17**:

Chase Personal Checking Account # 000000985370121, JPMorgan Chase

- 16 -

Bank, N.A., PO Box 659754, San Antonio, TX 78265.  Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

**INTERROGATORY NO.18**:

Describe all financial support decedent Elwood E. White, also known as Elwood Edwards provided you through May 20, 2012.

**RESPONSE TO INTERROGATORY NO. 18**:

Elwood would provide $100-$200 monthly help to his parents and any other financial assistance, as needed.  Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

**INTERROGATORY NO. 19**:

Identify all benefits (including but not limited to Social Security death benefits, Aid to Families with Dependent Children, Medi-Cal, County Health Care, and private insurance) by source, monetary payment amount, and value that you received by reason of the death of decedent Elwood E. White, also known as Elwood Edwards.

**RESPONSE TO INTERROGATORY NO. 19**:

None.

**INTERROGATORY NO. 20**:

Describe all household services decedent Elwood E. White, also known as Elwood Edwards provided you during the last five years of his life.

**RESPONSE TO INTERROGATORY NO. 20**:

Elwood would help maintain the home by helping clean up, doing yard work and in general helping with the regular upkeep of the family home.  Elwood frequently assisted with transportation of his siblings to various school and extra curricular activity events.  Discovery is ongoing and this responding Plaintiff reserves the right to amend or supplement this response.

//

- 17 -

**INTERROGATORY NO. 21**:

Identify each instance in which decedent Elwood E. White, also known as Elwood Edwards was ever arrested by arrest date, arresting agency, criminal charge, and charge disposition.

**RESPONSE TO INTERROGATORY NO. 21**:

Elwood has never been arrested to the best of Plaintiff's knowledge.

**INTERROGATORY NO. 22**:

If decedent Elwood E. White, also known as Elwood Edwards was ever incarcerated in a juvenile facility, jail or prison, identify each such incarceration by date of incarceration and institution name.

**RESPONSE TO INTERROGATORY NO. 22**:

Elwood has never been incarcerated as a juvenile to the best of Plaintiff's knowledge.

**INTERROGATORY NO. 23**:

If burial and/or cremation expenses were paid for the disposition of the remains of decedent Elwood E. White, also known as Elwood Edwards, state the name, address and telephone number of the person who paid the expenses and the amount of such expenses.

**RESPONSE TO INTERROGATORY NO. 23**:

Elwood's father and I paid for the funeral expenses:   $4,664.13.

**INTERROGATORY NO. 24**:

Separately identify each injury for which you seek compensatory damages and the monetary value of each injury.

**RESPONSE TO INTERROGATORY NO. 24**:

I lost my son.   He was only 22 years old.   I had to bury my son: it was the worst day of my life.   He was a good boy, growing up into a fine young man.   We shared a special bond.  I miss him immensely.  I loved my son dearly, and he loved

- 18 -

me dearly, and his showing his caring, support and concern for me.   We enjoyed our time together, I miss his companionship and affection.   As indicated above, he would contribute financially and around the house.   In addition, I miss my time with him so much that I have experienced emotional distress, depression, insomnia and nightmares.   I cannot calculate the monetary value of each of the injuries I have just identified.   That is what the jury will do in this action.   No amount of money can compensate me for the wrongful shooting of my son.

**INTERROGATORY NO. 25**:

Explain how you determined the monetary value of each of the injuries you listed in Interrogatory 24.

**RESPONSE TO INTERROGATORY NO. 25**:

I have not determined the monetary value of those injuries.   A jury in this action will make that determination.   I lost a loving son.   I cannot calculate he "value" of the loss of my son.   No mother could ever do that.   No mother would trade money for the loss of a dear son.   I will be content with whatever the jury determines.   The loss of my son, to me, is worth more than millions of dollars.

Dated: April 15, 2014

*DOUGLAS/HICKS LAW*

By: _____
Carl E. Douglas
Attorneys for Plaintiffs

- 19 -

**PROOF OF SERVICE (1013A C.C.P.)**

**STATE OF CALIFORNIA**　　　　　)
　　　　　　　　　　　　　　　　) ss.
**COUNTY OF LOS ANGELES**　　　)

　　　　I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business is: 8484 Wilshire Blvd., Suite 548, Beverly Hills, California 90211.

　　　　On **April 17, 2014** I served the foregoing documents described as: **PLAINTIFF DARLEEN EDWARDS WHITE'S RESPONSE TO INTERROGATORIES PROPOUNDED BY THE COUNTY OF SAN DIEGO, SET ONE** on interested parties in this action:

　X　　By placing the true copies thereof enclosed in sealed enveloped addressed as stated on the attached mailing list:

　___　　By placing a true copy thereof enclosed in sealed envelopes addressed as follows:

　___　　I deposited such envelope in the mail at Beverly Hills, California.  The envelope was mailed with postage thereon fully prepaid.

　X　　I caused such envelope to be deposited in the mail at Beverly Hills, California.  The envelope was mailed with postage thereon fully prepaid.

　X　　I am "readily familiar" with firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

　　　　Executed on **April 17, 2014** at Beverly Hills, California.

　___　　I delivered such envelope by hand to the offices of the addressee.

　　　　Executed on **August 17, 2008** at Beverly Hills, California.

**VIA HAND DELIVERY / PERSONAL SERVICE (C.C.P. §§ 1011, _et seq._):**

　_____　　I caused said document(s) to be personally served to each addressee.

　X__　　(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

　X　　(Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

　__Jacqueline E. Baker_____　　　　　　　　_____
　　　Type or print name　　　　　　　　　　　Signature

- 1 -

EXHIBIT A

# SERVICE LIST

ELWOOD TIMOTHY WHITE , Individually, and as Successor-in-Interest to the Estate of Elwood Edwards White, and DARLEEN EDWARDS WHITE vs. COUNTY OF SAN DIEGO, MICHAEL ASTORGA; CITY OF OCEANSIDE and 20 Unknown Other Named Defendants,

| | |
|---|---|
| Drew R. Antablin, Esq.<br>Andrea Bruce, Esq.<br>**ANTABLIN & BRUCE, ALP**<br>8484 Wilshire Blvd., Suite 548<br>Beverly Hills, CA. 90211<br>*(323) 651-4490*<br>*(323) 651-4990* | Attorneys for Plaintiff<br>ELWOOD TIMOTHY WHITE AND<br>DARLEEN WHITE |
| Deborah Nash, Esq.<br>**OCEANSIDE CITY ATTORNEY**<br>300 North Coast Highway,<br>Oceanside, CA. 92054. | Attorneys for Defendant<br>CITY OF OCEANSIDE |
| Rickey Sanchez, Esq.<br>**OFFICE OF THE COUNTY COUNSEL**<br>1600 Pacific Highway<br>San Diego, CA. 92101 | Attorneys for Defendants<br>COUNTY OF SAN DIEGO and<br>MICHAEL ASTORGA |

- 2 -

EXHIBIT A