# EXHIBIT C

CARL E. DOUGLAS, Esq., State Bar No. 097011
JAMON R. HICKS, Esq., State Bar No. 232747
*DOUGLAS / HICKS LAW*
A Professional Corporation
8484 Wilshire Boulevard, Suite 548
Beverly Hills, California 90211
(323) 655-6505   Fax: (323) 651-4990
carl@douglashickslaw.com
jamon@douglashickslaw.com

Drew R. Antablin, Esq., State Bar No. 75710
Andrea D. Bruce, Esq., State Bar No. 256561
**ANTABLIN & BRUCE, Law Partnership**
8484 Wilshire Boulevard, Suite 548
Beverly Hills, California 90211
(323) 655-6505   Fax: (323) 651-4990
antablin@sbcglobal.net

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| ELWOOD TIMOTHY WHITE, Individually, and as Successor-in-Interest to the Estate of Elwood Edwards White, and DARLEEN EDWARDS WHITE<br><br>*Plaintiffs,*<br><br>v.<br><br>COUNTY OF SAN DIEGO, MICHAEL ASTORGA; CITY OF OCEANSIDE, and 20 Unknown Other Named Defendants,<br><br>*Defendants.* | Case No. 13-CV-1166-MMA(RBB)<br><br>**PLAINTIFF'S SECOND AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Pretrial Conference Date: May 18, 2015<br>Trial Date:   June 11, 2015<br>Judge:       Hon. Michael Anello<br>Courtroom:  3A |

**Plaintiff's Memorandum of Contentions of Facts and Law**

**I. Factual Contentions**

The Plaintiffs are the biological parents of decedent Elwood Edwards White. Mr. White's fatal shooting occurred on May 20, 2012. At least five Sheriff's deputies and/or Oceanside police officers were present at the time Mr. Whie was shot and killed. Defendant Astorga shot and killed Mr. White. None of the other deputies/officers at the scene ever fired their weapons.

Deputy Jason Burk has been a Sheriff's Deputy since 2006 and was present at the scene of the shooting. Deputy Burk has received training on how to identify symptoms of different mental conditions in people he may encounter on the job. At the scene of this incident, when Deputy Astorga fired his weapon, Astorga was standing slightly behind Burk, and therefore Burk was closer to Mr. White when the shot was fired. At the time that Astorga fired his weapon, Burk had his gun drawn, aimed at Mr. White, and was ready to take whatever actions his training told him to take. Deputy Burk was trying to convey to Mr. White, in essence, 'Im about to shoot you if you don't comply.' Mr. White did not comply with Burk's commands.

Deputy Burk never fired his weapon. Deputy Burk had no concern about a cross-fire type of situation if he had fired his weapon. Deputy Burk did nothing in dealing with Mr. White that was contrary to his training, rather his actions were based on his training and did not violate his training. Deputy Burk did not shoot Mr. White because he did not feel the circumstances justified his doing so.

Randy Markham has been an Oceanside police officer since 1999. Officer Markham has been trained that, when encountering a citizen who appears crazy or to be acting crazy, based on symptoms that are being observed, officers are trained to approach such persons differently and with extreme caution.

///

EXHIBIT C
2
13-CV-1166-MMA(RBB)

1    At the scene, Mr. White was not complying with the commands given to
2 him, by an officer who was pointing a gun at him, to drop the stick he was
3 holding. At the time of the shooting, Mr. White's attention was not focused on
4 Markham, rather it was focused on another officer to the right of Markham. At the
5 time Mr. White was shot, he was allegedly approaching a deputy. He was merely
6 holding a stick. His arms were not extended and he did not take a swing with the
7 stick. He was at most, "wiggling" the stick.

8    Officers are not trained to shoot automatically even when confronted with a
9 citizen who presents an immediate threat to life. The officer is not required to use
10 deadly force. The decision is up to the officer. Officer Markham did not use
11 deadly force that day, even though he had his gun drawn, and even though the
12 possibility of using his gun came to mind. Markham never decided that he wanted
13 to fire his gun at Mr. White but decided not to because of a possible cross-fire
14 situation.

15    Approximately fifty (50) yards or more, in either direction, there was a
16 chain link fence at least 10 to 12 feet high directly behind Mr. White at the time he
17 was shot. In other words, he had nowhere to flee unless he was going to
18 physically engage and overpower five armed officers and a police dog.

19    Frank McCutcheon is a Oceanside police officer. He worked for Stockton
20 Police Department form 1992 to 2012, then started working for Oceanside.
21 Officer McCutcheon was present at the scene of this incident, removed his gun
22 and pointed it at Mr. White, but also chose to not fire his weapon. Officer
23 McCutcheon relied on and used his training and experience that day in deciding
24 not to fire his weapon at Mr. White. He was not worried about a possible cross-
25 fire situation, nor was there anything in the background of his line of fire which
26 caused him not to shoot. McCutcheon was trained that officers are authorized to
27 use deadly force if someone is confronted with an immediate or imminent threat of
28 having deadly force used against them, or serious bodily injury might be inflicted,

1  and there is no other available option.
2      Officer McCutcheon agrees with the estimate that the collective weight of
3  the five officers/deputies present at the scene was probably five times the weight
4  of Mr. White.  When he heard a shot, he believed he might have to shoot his own
5  weapon.  He recalls being interviewed by investigators the day of the shooting,
6  and did not say, at that time, that he began to pull the trigger but then he shot
7  before I did, or that he started to apply pressure to the trigger.
8      Asami Minami is and has been a San Diego County Sheriff's Deputy since
9  2007.  In 2012, he was working as a canine officer.  He had been on calls as a
10 canine officer for only about one week prior to this incident.  He was trained to
11 fire his weapon whenever he perceived the need, even with his canine partner on
12 leash in the field.  He is trained that the dog's presence should have no influence
13 on his choosing whether to use deadly force, if that is justified.  Although Mr.
14 White was not cooperating with commands he was being given, Deputy Minami
15 never pulled his gun out from his holster at the scene.
16     Defendant Astorga never saw Mr. White swing the stick, and although he
17 did see Mr. White "jab" the stick in his direction, Astorga did not then fire his
18 weapon or taser.  Mr. White took one step in Astorga's direction, and then
19 stopped.  Prior to his shooting Mr. White, Deputy Astorga heard Deputy Minami
20 say "less lethal" and to "grab the beanbag."
21     It was obvious to the Deputies/Officers that Mr. White was likely suffering
22 from a mental illness on scene.  He was babbling, throwing rocks indiscriminately,
23 and acting in a bizarre manner.  Nevertheless, the Deputies/Officers are trained on
24 how to deal with persons believed to be suffering from a mental illness.  From the
25 time that Defendant Astorga and Burk arrived on scene, it was only about two
26 minutes until the fatal shot was fired.  Properly trained officers will slow down the
27 situation, especially when dealing with someone who may be suffering from some
28 mental issues, in order to properly assess the situation and consider all available
options.

## II. Plaintiff's Legal Contentions

### A. Claims

Plaintiffs' complaint set out a general civil rights claim pursuant to 42 U.S.C. §1983 for violation of Mr. White's civil and constitutional rights.

Claim 1: Defendant violated the Fourth Amendment by using excessive force when he shot and killed Mr. White.

### B. Elements Required to Establish Plaintiff's Claim for Excessive Force Under the Fourth Amendment

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in arresting someone. Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officer used excessive force when he shot and killed Mr. White.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

In determining whether the officers used excessive force in this case, consider all of the circumstances known to the officers on the scene, including:

1. The severity of the crime or other circumstances to which the officers were responding;
2. Whether the plaintiff posed an immediate threat to the safety of the officers or to others;
3. Whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight;

|   |   |   |
|---|---|---|
| 1 | 4. | The amount of time and any changing circumstances during which the |
| 2 |   | officer had to determine the type and amount of force that appeared to |
| 3 |   | be necessary; |
| 4 | 5. | The type and amount of force used. |

See **Ninth Circuit Civil Jury Instruction** 9.22 (2007).

### C. Evidence Supporting Plaintiff's Claims

#### 1. Excessive Force

Plaintiff alleges that excessive force was used against Mr. White. Claims alleging excessive force are analyzed under the Fourth Amendment's "objective reasonableness" test. *Graham v. Connor*, 490 U.S. 386 (1989). In determining whether the use of force was reasonable, the courts should consider the "totality of the circumstances." *Quintanilla v. City of Downey*, 84 F.3d 353, 357 (9th Cir. 1996). This analysis is conducted based on the facts known to the officers at the time, and is not based on any facts not known to the officers. *Billington v. Smith*, 292 F.3d 1177, 1184–85 (9th Cir. 2002).

In this case, the use of force clearly violated the Fourth Amendment. Mr. White was suffering from a mental breakdown. The Deputies/Officers are trained on dealing with persons suspected of suffering from mental illness. It is undisputed that Defendant Astorga was acting under color of law throughout the subject incident. At no time, did the actions of the decedent pose any significant threat of injury to the shooting Officer, nor did the decedent resist the shooting Officer in a manner which would justify the use of deadly force.

#### 2. State Law Claims

In addition to the federal claims, Plaintiffs have state law claims for wrongful death, assault and battery, and negligence against Deputy Astorga and

the County of San Diego on the grounds that Astorga's force was reasonable and therefore privileged. As both parties acknowledge, the same "objectively reasonable" standard used to analyze excessive force claims under the Fourth Amendment also applies to Plaintiffs' claims for wrongful death, assault and battery, and negligence under California law. *See Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002)(en banc)("Most of the state law claims arise from the allegation that the individual officers used excessive force, and California denies immunity to police officers who use excessive force in arresting a suspect.")

### 2. Negligence Claim *(Pursuant to Local Rule 16.1)*

a. *Acts of Negligence Claimed:* Negligent Shooting; Violation of Post-training standards for use of deadly force.

b. *Specific Laws and Regulations Violated*: Violation of Post-training standards for use of deadly force.

c. *Res Ipsa Loquitur Relied Upon*: Not Applicable.

d. *Detailed List of Personal Injuries*: Death.

e. *Detailed List of Permanent Personal Injuries*: Death.

f. *Age of Plaintiff*: Elwood White (March 7, 1960); Darleen Edwards (October 27, 1956); Elwood White [decedent] (May 1, 1990).

g. *Life and work expectancy of Decedent*: Life Expectancy is 52 years; Work Expectancy is 30 years.

h. *Itemized Statement of all Special Damages to Date*: Funeral Expenses ($4,157.13) + Burial Expenses ($4,664.13) = **$8,821.26**.

i. *Statement of Loss of Earnings*: $20 per hour x 40 hour per week ($3200 per month) ($38,400 per year) x 30 years **($1,152,000.00)**

j. *Property Damage*: None.

///
///

**3. Wrongful Death** *(Pursuant to Local Rule 16.1)*

    a. *Date of Birth*: Elwood White [decedent] (May 1, 1990).

    b. *Marital Status*: Single. No children.

    c. *Employment for Five Years Before Death*: Hospice Worker; Jerry's Deli and Abercrombie and Fitch.

    d. *Life Expectancy*: 52 years.

    e. *General Physical Condition*: Good health.

    f. *Names and Date of Birth of Parents*: Elwood White (March 7, 1960); Darleen Edwards (October 27, 1956).

    g. *Decedent's Dependents*: None.

    h. *Amounts of Monetary Contribution*: $200-$300 average per month.

    i. *Statement of Decedent's Personal Expenses*: Unsure.

    j. *Family's Expenses for Decedent's Living Expenses*: None.

    k. *Amount Claimed for Love, Companionship, Comfort, Care, Assistance, Protection, Affection, Society, Moral Support:* $5 million Dollars.

**4. Punitive Damages**

Plaintiff is also entitled to punitive damages against the individual Defendant on all of the above claims. Case law is clear that individual public officials, including law enforcement personnel, can be held liable for punitive damages under § 1983. *Smith v. Wade*, 461 U.S. 30, 35–36 (1983). "A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* Defendants acted with callous indifference to Plaintiff's rights. The above mentioned acts of Defendants were also wanton and oppressive. *Dang v. Cross*, 422 F.3d 800, 808–09 (9th Cir. 2005). Defendant knowingly used force that was excessive against the decedent.

## III. Counterclaims and Defenses

### A. Summary of Defenses

Affirmative Defense 1: Defendants claim that they were acting in self-defense or in the defense of others.

Affirmative Defense 2: Defendants claim that they are entitled to qualified immunity.

### B. Elements of Defenses

**Elements Required to Prove that Defendants Have Qualified Immunity**

In *Ramirez v. City of Buena Park,* the Ninth Circuit reiterated the two-step analysis as follows:

Under *Saucier*'s first prong, we consider whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. Where disputed issues of fact remain, we view the facts in the light most favorable to Ramirez, the non-moving party. *See Beier v. City of Lewiston,* 354 F.3d 1058, 1063 (9th Cir.2004). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201.

Under *Saucier*'s second prong, we ask "whether the right was clearly established." *Id.* To be "clearly established," the " 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* at 202, 121 S.Ct. 2151 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The dispositive inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* "If the officer's mistake as to what the law requires is reasonable, ... the officer is entitled to the immunity defense." *Id.* at 205. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).

///

The committee has not formulated any instructions concerning qualified immunity because most issues of qualified immunity are resolved before trial.

See **Ninth Circuit Civil Jury Instruction** 9.26(comment) (2007).

### Elements Required to Prove that Defendants Were Acting in Self- Defense or Defense of Others

Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary under the circumstances.

See **Ninth Circuit Criminal Jury Instruction** 6.8 .

### C. Plaintiff's Factual and Legal Contentions in Response to Defenses

**Affirmative Defense 1: Self-Defense**

The evidence in this case clearly demonstrates that the officers were not acting in self-defense or in the defense of others. At the time that Defendant Astorga shot the decedent, Plaintiff did not represent a threat to the officers. He was suffering from a mental illness but never swung the stick in the moments before he was shot. Additionally, at the time the Defendant shot, there was no immediate defense of life. Thus, the officers' affirmative defense that they were required to use such force in self-defense or in defense of others must fail.

The evidence in this case demonstrates that the officers were not objectively threatened by Mr. White and did not reasonably believe that they were. Moreover, the force used was not reasonably necessary.

**Affirmative Defense 2: Qualified Immunity**

Defendant officers do not have qualified immunity where they are aware that the force they are using is excessive. Here, White did not pose an "immediate threat" to Deputy Burk's safety. Additionally, Defendant Astorga was aware that White may have been suffering from some sort of emotional disturbance, and that their were alternative, non-lethal means of force that were feasible.

As such, a reasonable officer would know that shooting an individual who was not posing an immediate threat to anyone was not entitled to use deadly force.

## IV. Bifurcation

Plaintiff contends that bifurcation between liability and damages is unnecessary.

## V. Evidentiary Issues

Plaintiff has pending motions in limine on the following:
1. Exclusion of marijuana in Mr. White's system and prior drug use;
2. Exclusion of Mr. White's criminal history.

## VI. Jury Trial

Plaintiffs have timely demanded a jury trial on all issues. Plaintiffs expect the jury trial to last approximately 10 days.

## VI. Attorneys' Fees

Plaintiff is seeking attorneys' fees pursuant to 42 U.S.C. §1988.

## VII. Abandonment of Issues

Plaintiff has abandoned the 14th Amendment claim made in the complaint. Plaintiff has also abandoned his *Monell* claim against the County of San Diego. Plaintiff has also agreed that he is not bringing a claim that the conduct against

him violated his right to be free from racial discrimination by the officers.

## VIII. Plaintiff's Witness List

Plaintiff's Witness List will be filed under separate cover.

## IX. Joint Exhibit List

The Joint Exhibit List will also be filed under separate cover.

Dated: May 21, 2015                    Respectfully Submitted,

                                       DOUGLAS / HICKS LAW, APC
                                       ANTABLIN & BRUCE


                                       By:     /s/ Jamon R. Hicks
                                       CARL E. DOUGLAS
                                       JAMON R. HICKS
                                       Attorney for Plaintiffs **ELWOOD TIMOTHY WHITE**, Individually and as Successor-in-Interest to the **ESTATE OF ELWOOD EDWARDS WHITE, and DARLEEN WHITE**